**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Unison Equity Sharing Agreements Litigation | MDL No. ____________ |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

**Page**


INTRODUCTION AND RELEVANT BACKGROUND ........ 1

A. Relevant Factual Background ........ 2

B. Procedural History ........ 6

LEGAL STANDARD ........ 8

ARGUMENT ........ 8

I. CONSOLIDATION IS APPROPRIATE UNDER SECTION 1407 ........ 8

A. The Actions Involve Common Questions of Fact. ........ 9

B. Consolidation Will Promote the Just And Efficient Conduct of the Actions. ........ 12

1. Consolidation Will Prevent Duplicative Discovery. ........ 12

2. Consolidation Will Prevent Inconsistent Rulings ........ 13

3. No Action Is Significantly More Advanced Than the Others. ........ 17

C. Consolidation Will Serve the Convenience of the Parties and Witnesses. ........ 18

II. TRANSFER TO THE EASTERN DISTRICT OF NEW YORK IS APPROPRIATE. ........ 18

CONCLUSION ........ 20

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Unison Midgard Holdings LLC, and Odin New Horizon Real Estate Fund LP (together, "Unison") hereby move to transfer and consolidate for pretrial coordination the five federal actions—four putative class actions and one individual action—listed in the Schedule of Related Actions (the "Related Actions"), as well as any similar tag-along actions that may be filed, to the U.S. District Court for the Eastern District of New York, where the first-filed putative class action is pending before Judge Eric N. Vitaliano.

## INTRODUCTION AND RELEVANT BACKGROUND

Each of the Related Actions arises from plaintiffs' contracts with Unison. Pursuant to those contracts, referred to as "HomeOwner Agreements," Unison paid plaintiffs for an option to buy a percentage share of their homes in the future. Plaintiffs allege that the HomeOwner Agreements are not equity option contracts but are instead undisclosed mortgage loans. Plaintiffs' claims all turn on this "loan recharacterization" theory. In addition, many putative class members agreed, as part of their HomeOwner Agreements, to individual arbitration of any disputes regarding their transactions, and further agreed that questions of arbitrability, too, should be decided via arbitration. Under the Federal Arbitration Act, a court must compel arbitration in these circumstances. Plaintiffs will disagree about the answer to these questions—whether the FAA applies, and whether the HomeOwner Agreements are, as they are described, equity option contracts—but these indisputably are threshold questions in each of the actions.

Transfer and consolidation for pretrial proceedings is therefore appropriate under 28 U.S.C. § 1407. All of the actions arise from a common set of facts: the nature and terms of the Unison HomeOwner Agreements. Centralization would further judicial economy and the efficient conduct of the actions by coordinating discovery, which will be virtually identical in each action, and by

preventing potentially conflicting rulings, particularly with respect to the threshold issue of arbitration and class certification. Transfer to the Eastern District of New York is appropriate because the first-filed putative class action is pending there, the district is in an easily accessible metropolitan area (Brooklyn, New York) for the parties and counsel, and New York is one of Unison's largest states by contract value and volume. Judge Eric N. Vitaliano, to whom the first-filed putative class action has been assigned, is a tenured trial judge with experience handling complex cases.

### A. Relevant Factual Background

The HomeOwner Agreements that plaintiffs challenge address a clear market gap by providing homeowners with a financial alternative that is different from the traditional debt-based loans previously available to those hoping to liquidate a portion of their home equity. Unison's product allows homeowners to obtain cash *without taking on debt or selling their home*, while also providing long-term investors a way to invest in residential real estate. The HomeOwner Agreement is an option contract—a financial product that is well known in many different contexts, including financial markets, employee compensation contracts (such as options to buy stock of the employer company at a fixed price), and farm contracts.[1]

Unison provides homeowners with a large cash payment at the outset of the HomeOwner Agreement, which the homeowner is free to use without the burden of monthly payments. *See, e.g.*, HomeOwner Agreement § 2.[2] In return, the homeowner gives Unison an option to buy a

---

[1] Financial Industry Regulatory Authority, Investment Products: Options, https://www.finra.org/investors/investing/investment-products/options.

[2] Unison includes as Exhibit A a copy of the HomeOwner Agreement between Unison and one of the named plaintiffs in the NY Action, as a representative example of the challenged contracts. Other than the inclusion (or not) of the arbitration provision, plaintiffs do not allege any material differences in the HomeOwner Agreements.

portion of the home in the future for a fixed price. *Id.* § 3. The result is that Unison could profit if the home increases in value such that Unison's ownership share is worth more than the fixed price it agreed to pay the homeowner. But Unison could lose money if its home ownership share is worth less than the fixed price it agreed to pay, as it often did after the 2008 financial crisis and the resulting drop in home values. Put simply, the homeowner receives money at the time of the agreement and, in exchange, gives Unison an option to *buy a share of* the home at a specified price, thus agreeing to split future increases in the value of the home. Unison is not lending money but rather purchasing a specific type of property right: the future right to buy a portion of the home at a fixed price. Unison is an equity investor, not a lender. As a result, homeowners benefit by accessing liquidity—not by taking on debt, but by selling equity.

Plaintiffs all allege that the HomeOwner Agreements are not equity option contracts but are instead undisclosed mortgage loans. *See, e.g.*, NY Compl. ¶ 22 ("[Unison's] product is a mortgage loan."); CO Compl. ¶ 8 ("Unison's product *is* a loan."); NJ Compl. ¶ 1 ("Defendants market and sell residential mortgage loans . . ."); MA Compl. ¶ 8 ("Unison's product is a mortgage loan . . .").[3] Based on this theory, plaintiffs allege that the HomeOwner Agreements violate state consumer protection statutes, mortgage lending regulations, and usury laws limiting interest that can be charged on loans.[4] The putative class action complaints further allege that many of the *same* "questions of law and fact" are "common to all members" of the putative classes:[5]

---

[3] The individual action alleges the same. *See, e.g.*, DC Compl. ¶ 29 ("Unison conceals that it is luring homeowners into mortgage loans . . .").

[4] *E.g.*, NY Am. Compl. Claims for Relief (alleging violation of NY usury laws, statutory obligations for mortgage lenders, and false advertising and deceptive business practices); CO Compl. Causes of Action (alleging violation of CO equivalents); NJ Compl. Claims for Relief (alleging violation of NJ equivalents); MA Compl. Claims for Relief (alleging violation of MA equivalents); DC Compl. Counts (alleging violation of DC equivalents).

[5] Unison does not agree that class treatment of any of plaintiffs' claims is appropriate.

| **Alleged "Common" Question** | **NY** | **CO** | **NJ** | **MA** |
|---|---|---|---|---|
| Is the HomeOwner Agreement an option contract, or a mortgage loan? | ¶ 180(d) | ¶ 261(a), (b), (g), (h) | ¶ 184(a) | ¶ 190(a) |
| Is the HomeOwner Agreement or any of its terms "unconscionable" or "usurious"? | ¶ 180(c) | ¶ 261(i) | ¶ 184(b), (d) | ¶ 190(b)(i)–(iii), (b)(vii), (e) |
| Are Unison's disclosures in or about the HomeOwner Agreement "deceptive"? | ¶ 180(a) | ¶ 261(c), (d), (e), (f) | ¶ 184(b), (c), (d) | ¶ 190(b)(i)–(ii), (b)(v), (c), (d) |
| Is Unison's advertising or marketing regarding the HomeOwner Agreement "deceptive"? | ¶ 180(b) | ¶ 261(c), (d), (e), (f), (j) | ¶ 184(c), (d) | ¶ 190(b)(i)–(ii), (b)(v), (c), (d) |
| Is the HomeOwner Agreement a "high-cost" or "reverse" mortgage loan? | ¶ 180(d) | ¶ 261(h) | ¶ 184(e) | ¶ 190(b)(iv), (b)(vi) |
| Did Unison make mortgage loans without the requisite licenses? | ¶ 180(e) | ¶ 261(g), (h) | ¶ 184(e) | ¶ 190(b)(vi) |

Many of the putative class members' claims are subject to binding arbitration agreements. Decl. of Randall Lehner in Supp. of Defs.' Mot. for Transfer ("Lehner Decl.") ¶ 4. Since approximately November 2019, Unison has included in each of its HomeOwner Agreements a mandatory arbitration provision and class action waiver. HomeOwner Agreement, § 20; Lehner Decl. ¶ 4. The arbitration agreement provides:

> You [homeowner] and Investor [Unison] agree that either party may, at its sole election, choose to submit to neutral, binding arbitration pursuant to this Section 20 (the "Arbitration Provision") rather than court action the following controversies [which include any controversy that] arises out of or relates to the Unison HomeOwner Agreement . . .

*Id.* § 20.1. The arbitration agreement further explains, in capitalized letters, "IF A DISPUTE IS ARBITRATED, YOU GIVE UP THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR A CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST INVESTOR . . . ." *Id.* § 20.2. The arbitration provision is unequivocal and provides

that its scope "is to be given the broadest possible interpretation that is enforceable" and that its "interpretation and scope . . . and the arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action." *Id.* § 20.3. Finally, the agreement makes clear that it "shall be governed by and enforceable under the Federal Arbitration Act ('FAA')." *Id.* § 20.6.

The plaintiffs whose HomeOwner Agreements include an arbitration agreement do not dispute the existence of the agreement or the fact that they voluntarily signed it. They say that the agreement is not enforceable because the federal Truth in Lending Act, 15 U.S.C. § 1639c(e)(1) ("TILA"), precludes arbitration agreements in residential mortgage loans. *See, e.g.*, NY Action, ECF No. 29; NJ Action, ECF No. 2.[6]

Finally, the complaints all plead that the transactions were unlawful from the start, not that some later and independent wrong occurred after signing. *E.g.*, MA Compl. ¶ 200 ("the Unison HomeOwner Agreement was unconscionable at the time it was made"); *see also* NY Compl. ¶¶ 109–21, 139–50; CO Compl. ¶¶ 182–98, 214–27; 237–51; NJ Compl. ¶¶ 158–64, 168–74. As a result, nearly every claim involving a HomeOwner Agreement signed *before* November 2019 (when Unison began including the arbitration provision) is barred by the applicable limitations periods, which range from 1 to 6 years from the date of closing for the various claims.[7]

[6] The arbitration issue has yet to be raised in the CO and MA Actions, but Unison expects plaintiffs' response will be the same. Plaintiffs' counsel in the CO and MA Actions have already invoked TILA as an arbitration defense in other cases against Unison. *See, e.g.*, *NACA v. Unison Agreement Corp.*, No. 2026-CAB-000955, (D.C. Super. Ct.), Opp. to Mot. to Compel Arbitration and Stay Proceedings, filed July 2, 2026, at 16–19 (TILA defense raised by plaintiffs' counsel in CO and MA Actions).

[7] The NY claims have 3-6 year statutes of limitation, *e.g.* N.Y. Banking L. §§ 6-1, 590, 590-b; N.Y. Gen. Bus. Law §§ 349, 350. The CO claims have 1-6 year statutes of limitation, *e.g.*, C.R.S. §§ 5-3-101, 5-5-109, 5-3-110, 6-1-101 *et seq.*, 38-40-101 *et seq.*, 11-38-101 *et seq*. The NJ claims have 6 year statutes of limitation, *e.g.*, N.J.S.A. §§ 17:11C-51 *et seq.*, 46:10B-22 *et seq.*, 56:8-1 *et seq.*, 56:12-14 *et seq*. The MA claims have 4 year statutes of limitation, *e.g.*, M.G.L. c. 93A; M.G.L. c. 140D, § 1, *et. seq*.

### B. Procedural History

The Related Actions are pending against Unison in five different districts.[8]

The NY Action, *Coffin v. Unison Agreement Corp.*, No. 1:26-cv-01587, was filed in the U.S. District Court for the Eastern District of New York on March 17, 2026, for violations of New York's consumer protection and mortgage lending laws on behalf of a putative class of New York consumers. Plaintiffs amended their complaint on May 11, 2026. ECF No. 13 ("NY Compl.," Exhibit B). The parties filed letters regarding Unison's forthcoming motion to compel arbitration and to dismiss, ECF Nos. 25 and 29, briefing of which is held in abeyance pending the Panel's decision on this Motion. ECF No. 36. On July 31, 2026, and again on August 7, 2026, Unison informed the court of its intent to file this Motion and to seek a stay of all proceedings pending the Panel's decision, which request plaintiffs do not currently oppose. ECF Nos. 32 and 34. The parties have exchanged limited discovery on the named plaintiffs' HomeOwner Agreements. *See* Minute Order dated July 21, 2026.

The CO Action, *Kane v. Unison Agreement Corp.*, No. 1:26-cv-01444, was filed on April 6, 2026 in the U.S. District Court for the District of Colorado, for violations of Colorado's consumer protection and mortgage lending laws on behalf of a putative class of Colorado

---

[8] Three other individual actions are pending against Unison in federal courts. Unison does not seek their transfer to the MDL because they are at an advanced procedural stage and/or involve distinct issues. *See Weingot v. Unison Agreement Corp.*, No. 2:21-cv-4542 (E.D.N.Y.) (filed May 28, 2021 and removed on August 12, 2021, set for trial in November 2026); *Goldwater Bank, NA v. Elizarov*, No. 24-661 (C.D. Cal.) (filed May 11, 2021 and removed on June 8, 2021, on appeal of dismissal of all claims against Unison); *Stone v. Real Estate Equity Exchange Inc.*, No. 1:24-ap-1181 (D. Colo. Bankr.) (adversary complaint filed August 8, 2024, motions to dismiss decided).

There also are state putative class actions against Unison that present the opportunity for informal discovery coordination with the federal MDL, if those cases survive pending dispositive motions. *See Unison Contract Cases*, No. 5432 (Cal. Super. Ct.) (filed September 11, 2025, demurrers to be heard September 24, 2026); *NACA v. Unison Agreement Corporation, et al.*, No. 2026-CAB-000955 (D.C. Super. Ct.) (filed February 11, 2026, motion to compel arbitration fully briefed).

consumers. Plaintiffs amended their complaint on June 8, 2026. ECF No. 22 ("CO Compl.," Exhibit C). On August 11, 2026, Unison filed an unopposed motion to stay all proceedings pending the Panel's decision on this Motion. ECF No. 26. The parties have not exchanged any discovery.

The NJ Action, *Santaniello v. Unison Agreement Corporation*, No. 2:26-cv-07117, was filed on June 15, 2026 in the U.S. District Court for the District of New Jersey for violations of New Jersey's consumer protection and mortgage lending laws on behalf of a putative class of New Jersey consumers. ECF No. 1 ("NJ Compl.," Exhibit D). The parties filed letters regarding Unison's forthcoming motion to compel arbitration and to dismiss. ECF Nos. 18 and 20. On August 13, 2026, the court granted Unison's unopposed request to stay all proceedings pending the Panel's decision on this Motion. ECF No. 23. The parties have not exchanged any discovery.

The MA Action, *Cuvellier v. Unison Agreement Corp.*, No. 3:26-cv-30126, was filed on August 5, 2026 in the U.S. District Court for the District of Massachusetts for violations of Massachusetts's consumer protection and mortgage lending laws on behalf of a putative class of Massachusetts consumers. ECF No. 1 ("MA Compl.," Exhibit E). The parties have not exchanged any discovery.

The four putative federal class actions were filed over a span of six months at a rate of approximately one class action every six weeks (including the putative state class actions, Unison has been sued in a new putative class case approximately every six weeks for the past *eleven* months). At that rate, in the absence of a consolidated proceeding, more federal courts throughout the country could be facing these same factual and legal questions.

The DC Action, *Evans v. Unison Agreement Corp.*, No. 1:26-cv-0999, is an individual case based on the same factual predicate. It was filed on February 5, 2026 in the District of Columbia Superior Court for violations of Washington D.C.'s consumer protection and mortgage lending

laws, and it was removed on March 23, 2026 to the U.S. District Court for the District of Columbia. ECF No. 1 ("DC Compl.," Exhibit F). On May 4, 2026, the court stayed Unison's deadline to respond to the complaint pending further order from the court. Minute Order Dated May 4, 2026. The parties have not exchanged any discovery.[9]

## LEGAL STANDARD

The Panel may centralize for pretrial proceedings actions pending in different districts if the movant shows: (1) that "common questions of fact" exist; (2) that centralization "will promote the just and efficient conduct of such actions"; and (3) that centralization "will be for the convenience of parties and witnesses." 28 U.S.C. § 1407(a). Consolidation under Section 1407 "eliminate[s] the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491–92 (J.P.M.L. 1968); *see also In re Nat'l Student Mktg. Litig.*, 368 F. Supp. 1311, 1316 (J.P.M.L. 1972) (Section 1407 is meant to support the "just, speedy and inexpensive determination of every action").

## ARGUMENT

### I. CONSOLIDATION IS APPROPRIATE UNDER SECTION 1407.

Transfer and consolidation of the Related Actions to the Eastern District of New York for pretrial coordination fulfills Section 1407's three statutory requirements. *First*, the actions present "common questions of fact," regarding the nature and terms of the Unison HomeOwner Agreements, § I.A. *Second*, consolidation will be just and efficient because it will eliminate duplicative discovery and the risk of inconsistent decisions on key federal issues such as arbitration

[9] Another individual action based on the same theory, *Francischetti v. Unison Agreement Corp.*, No. C-03-CV-26-003382, was filed in Maryland state court on July 21, 2026. The next day, the court issued a deficiency notice. If the plaintiff cures the deficiency, Unison will remove the action to the U.S. District Court for the District of Maryland and tag it in this proceeding.

and class certification, § I.B. *Third*, consolidation will be convenient for the parties and witnesses because pretrial proceedings will be coordinated in one, convenient location, § I.C. and § II.

**A. The Actions Involve Common Questions of Fact.**

All of the "actions involve[] one or more common questions of fact," 28 U.S.C. § 1407(a), which weighs heavily in favor of consolidation. They all concern whether the Unison HomeOwner Agreement is, as disclosed, an "option agreement" (HomeOwner Agreement § 1.1) or, as plaintiffs all contend, an "illegal mortgage loan[]" with "substantial interest." *E.g.* NY Compl. ¶ 2.[10]

Most immediately, all Unison HomeOwner Agreements signed after November 2019 contain the mandatory arbitration provision and class action waiver, raising common issues whether: (1) the parties entered into a valid and binding arbitration agreement; (2) the agreement delegates questions of interpretation and scope to the arbitrator (which would mean the arbitrator, not a court, must determine plaintiffs' argument that TILA invalidates the arbitration agreements); and (3) this dispute is within the scope of that agreement (which would be decided by the arbitrator if the delegation clause is properly enforced). Unison submits that the answer to each of these questions is "yes." *See* HomeOwner Agreement, § 20. Plaintiffs will say the opposite. But there is no serious dispute that this is a threshold question of federal law that will be "common" to every plaintiff with an arbitration agreement. *See* HomeOwner Agreement at § 20.6 and *infra* § I.B.2.a. And that threshold issue will need to be resolved before any action may move forward.

[10] *See also, e.g.* CO Compl. ¶¶ 8–9 (alleging "Unison bypasses the laws governing consumer credit and mortgage products" resulting in "effective interest in the form of a significant lump sum balloon payment at the conclusion of the term"); NJ Compl. ¶ 1 (alleging "Defendants market and sell residential mortgage loans unconscionably dressed up as complex and confusing financial 'options' with the sole and overriding purpose to avoid the panoply of New Jersey legislation designed to explicitly protect homeowners against such products"); MA Compl. ¶¶ 8–9 (alleging "Unison's product is a mortgage loan" and that "Unison seeks to circumvent applicable consumer protection and lending laws by falsely labeling its product an 'option contract'").

Even once the arbitration issue is resolved, all of the actions and claims rely on the same "loan recharacterization" theory of liability. Many of plaintiffs' causes of action present this question directly, including, for example, the statutory claims that accuse Unison of failing to comply with mortgage lending registration or disclosure obligations (including failure to make requisite disclosures under TILA). *E.g.*, NY Compl. ¶ 193 (alleging "Unison has made and continues to make mortgage loans without a license"), CO Compl. ¶¶ 280–81 (alleging "Unison is required to make disclosures as required by TILA and its accompanying regulations," which "Unison does not make"); NJ Compl. ¶ 179 (alleging Unison "was acting as a residential mortgage lender, [but] did not obtain a residential mortgage license"); MA Compl. ¶ 264 (alleging "Defendants have violated provisions regarding the activity of mortgage lenders"). Several of plaintiffs' other causes of action also require the resolution of the loan recharacterization question as a threshold issue. For example, claims for violations of usury laws or interest limits are all plainly subject to dismissal if the underlying contracts are *not* loans, and therefore no money is lent and no interest is charged. *See Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992) ("If the transaction is not a loan, there can be no usury, however unconscionable the contract may be."); *see also Blue Citi, LLC v. 5Barz Int'l Inc.*, 338 F. Supp. 3d 326, 335 (S.D.N.Y. 2018), *aff'd*, 802 F. App'x 28 (2d Cir. 2020) (finding that usury laws "apply only to loans, not investments"). Indeed, the putative class action complaints themselves allege that the same "common" fact questions support class treatment. *See* NY Compl. ¶ 180, CO Compl. ¶ 261, NJ Compl. ¶ 184; MA Compl. ¶ 190; *see also supra* table at p. 4. Unison does not agree that class treatment is appropriate, but the question of whether Rule 23's prerequisites are met is the same or substantially similar across all actions. *See also infra* § I.B.2.b.

That plaintiffs seek to certify statewide classes and bring claims based on state law does not compel a different result. The Panel "often ha[s] held," in similar circumstances, that the plaintiffs' invocation of different state laws or other "legal claims or additional facts is not significant" where "the actions arise from a common factual core," as this one plainly does. *In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1374–75 (J.P.M.L. 2023); *see, e.g.*, *In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 3052, ECF No. 216 at 2 (J.P.M.L. June 2, 2023) ("While defendants are correct that [legal] claims may vary in important ways from state to state," "[t]he presence of differing legal theories is outweighed when the underlying actions, such as the actions here, arise from a common factual core.").

For example, in *In re Insulin Pricing Litigation*, the Panel ordered consolidation of actions concerning civil conspiracy claims under four different state laws. 688 F. Supp. 3d at 1376. In doing so, the Panel disagreed with the parties who opposed consolidation and concluded, "[c]onsidering that the alleged conspiracy to fraudulently raise insulin prices is at the heart of all actions," that "the alleged factual and legal differences implicated by the involvement of distinct state laws and programs d[id] not preclude centralization." *Id.* at 1374. Similarly, in *In re Fisher-Price Rock N' Play Sleeper Mktg., Sales Pracs. & Prods. Liab. Litig.*, presented with ten actions seeking certification of statewide classes asserting claims for fraud, unjust enrichment, negligence, and consumer protection violations, the Panel concluded that the "actions share[d] factual questions arising from allegations that Fisher-Price's Rock 'n Play Sleeper (RNPS) is unsafe" due to its design. 412 F. Supp. 3d 1357, 1358–59 (J.P.M.L. 2019). In *In re Bausch & Lomb, Inc.*, the Panel concluded that actions asserting products liability, negligence, and fraudulent misrepresentation claims under various state laws involved "common questions of fact" about the challenged product and the "manufacturer's knowledge" of the purported defects that justified

consolidation. 444 F. Supp. 2d 1336, 1338 (J.P.M.L. 2006). Here, too, plaintiffs' challenge to the nature of the HomeOwner Agreement is "at the heart of all actions," in comparison to which "the alleged factual and legal differences implicated by the involvement of distinct state laws" are "not significant." *In re Insulin Pricing Litig.*, 688 F. Supp. 3d at 1374–75. Moreover, it is "within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *Id.* at 1375.

**B. Consolidation Will Promote the Just And Efficient Conduct of the Actions.**

Consolidation of the Related Actions is further appropriate because it will "eliminate duplicative discovery," "prevent inconsistent pretrial rulings, including with respect to class certification," and "conserve the resources of the parties, their counsel, and the judiciary." *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (J.P.M.L. 2017); *see also In re Bank of Am. HAMP Cont. Litig.*, 746 F. Supp. 2d 1359, 1361 (J.P.M.L. 2010) (centralizing eight putative statewide class actions).

***1. Consolidation Will Prevent Duplicative Discovery.***

Where, as here, "Plaintiffs in all actions likely will seek to obtain the same documents from defendants and depose the same [] witnesses," consolidation prevents duplicative discovery and thus promotes justice and efficiency. *In re Folgers Coffee Mktg. & Sales Pracs. Litig.*, 532 F. Supp. 3d 1416, 1416–17 (J.P.M.L. 2021) (centralizing five class actions asserting "similar claims" for violation of different state consumer protection laws because there were "share[d] factual questions," and thus the plaintiffs "in all actions likely [would] seek to obtain the same documents from defendants and depose the same Folgers witnesses," and potentially require "[e]xpert testimony relating to the effect on consumers of Folgers' marketing and labeling").

The shared factual issues in the Related Actions will necessarily create overlap in both fact and expert discovery. The plaintiffs in each action will seek the same discovery from Unison,

including: data regarding the numbers and dates of Unison HomeOwner Agreements; documents regarding policies and procedures surrounding Unison HomeOwner Agreements; documents regarding changes to Unison HomeOwner Agreements over time; documents regarding disclosures and marketing materials provided to Unison homeowners or prospective homeowners; documents and information regarding the relationship among various Unison entities; internal and external communications regarding all of these issues; depositions of Unison personnel; and expert discovery, including industry and financial experts. These topics and issues present "the potential for duplicative and complex discovery and discovery motions" which centralization will "substantially eliminate[]." *In re Fisher-Price Rock N' Play Sleeper Mktg.*, 412 F. Supp. 3d at 1359. Moreover, aside from limited discovery relating to the named plaintiffs in the NY Action, discovery has not commenced in any Related Actions, allowing the parties to immediately benefit from the efficiencies of coordinated discovery. *See In re Lowe's Cos., Inc., FLSA & Wage & Hour Litig.*, 481 F. Supp. 3d 1332, 1333–34 (J.P.M.L. 2020) (granting consolidation of actions because, among other reasons, "no depositions of [defendant] ha[d] been taken and there ha[d] been no significant document productions on the common issues").

### 2. ***Consolidation Will Prevent Inconsistent Rulings.***

#### a) <u>The Arbitration Issue Is a Threshold Question of Federal Law Applicable to Many Unison HomeOwner Agreements.</u>

The first question posed by the Related Actions is whether the mandatory arbitration provision contained in many Unison HomeOwner Agreements is enforceable. *See, e.g.,* HomeOwner Agreement § 20.1; Lehner Decl. ¶ 4. If it is, none of these cases belong in court, at least not as the putative classes are currently defined.[11] But even if the arbitration provision is held

[11] Though the named plaintiffs in the MA Action do not have arbitration agreements, the threshold issue of arbitrability will impact many members of the putative MA class, and thus must be decided before any class can be certified. Lehner Decl. ¶ 4 .

not to be enforceable, the resolution of that question is common to all actions, and proceeding independently risks inconsistent answers to this common federal question.

The arbitration provision in the HomeOwner Agreements expressly invokes the FAA, and the transactions reflected in those agreements involve "commerce" as defined in the FAA. *See* HomeOwner Agreement § 20.6; 9 U.S.C. §§ 1, 2. Thus, the courts deciding these issues must apply the FAA, *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003), meaning that the threshold arbitrability question will be resolved under the same body of federal law in each case, regardless of which district is evaluating it. Left uncoordinated, courts across the country could reach different results on identical federal questions within months of each other. Centralization is required for the "consistent and expeditious consideration of this threshold issue." *In re Checking Acct. Overdraft Litig.*, MDL No. 2036, 2009 WL 3460951, at *1 (J.P.M.L. Oct. 13, 2009) (granting consolidation where defendant asserted plaintiff's claims were subject to arbitration); *see also In re Coinbase Customer Data Sec. Breach Litig.*, MDL No. 3153, ECF No. 111 at 2 (J.P.M.L. Feb. 5, 2026) (finding that forthcoming motion to arbitrate "weighs in favor of transfer because transfer will ensure consistent interpretation of the arbitration provision") (citation omitted); *In re: Roblox Corp. Child Sexual Exploitation & Assault Litig.*, MDL No. 3166, ECF No. 98 at 2 (Dec. 12, 2025) (centralizing litigation involving motions to compel arbitration and noting "efficiencies likely can be gained by having a single court preside over all such motions").

In addition to application of the FAA, Plaintiffs will raise the same federal TILA defense against enforcement of the arbitration provision, and Unison will argue that defense is for the arbitrator to resolve—presenting two more common federal questions that support coordination. Plaintiffs' position is that the arbitration agreements are void as a matter of federal law based on the theory that the HomeOwner Agreements are "residential mortgage loans," and TILA prohibits

arbitration of disputes regarding residential mortgage loans. Plaintiffs in multiple Related Actions already have asserted this defense, and plaintiffs in the remaining actions are expected to do so too. *See supra* p. 5. Unison's position is both that plaintiffs' attempt to recharacterize the HomeOwner Agreements is plainly incorrect and that the question of whether TILA bars enforcement of the arbitration clause is itself to be decided by the arbitrator. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1034 (9th Cir. 2022) (argument that a statute precludes arbitration "raises exactly the type of threshold arbitrability issue that the parties have delegated to the arbitrator"). If the actions are not consolidated, varying district courts could simultaneously render different answers to these important questions of federal law.

The need to coordinate these actions for purposes of determining arbitrability goes beyond the district court. The denial of a motion to compel arbitration is immediately appealable as of right under 9 U.S.C. § 16(a)(1)(B). Any such appeal would need to be resolved before the actions could proceed on the merits as to any plaintiffs or class members whose claims are subject to arbitration agreements. Without centralization, district courts across the country will issue separate rulings, followed by potential separate interlocutory appeals to multiple circuit courts—all addressing the enforceability of the same arbitration provision under the same federal statutes. The risk that some or all of these decisions will be inconsistent or irreconcilable with each other is obvious.[12] The Panel has the authority to prevent that outcome. *See, e.g.*, *In re: Coinbase Customer Data Sec. Breach Litig.*, MDL No. 3153, ECF No. 111 at 2; *In re: Roblox Corp. Child Sexual*

[12] At least one federal court has already enforced Unison's arbitration agreement. *Olsen v. Unison Agreement Corp.*, 2023 WL 4492346 (W.D. Wash. June 27, 2023). A ruling in favor of plaintiffs in any of their intended challenges will thus immediately result in conflicting federal decisions on this issue.

*Exploitation and Assault Litig.*, MDL No. 3166, ECF No. 98 at 2 (Dec. 12, 2025); *In re Cintas Corp. Overtime Pay Arb. Litig.*, 444 F. Supp. 2d 1353, 1354–55 (J.P.M.L. 2006).

b) Certification of the Class Actions Will Involve Assessing the Same Core Allegations and Facts Against Rule 23's Requirements.

Regardless of the outcome on arbitration, each of the putative class actions seeks class certification based on the same theory of liability. The risk of inconsistent class certification rulings also necessitates transfer. *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (the Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists"); *In re Plumbing Fixture Cases*, 298 F. Supp. at 491–93 ("it is in the field of class action determinations in related multidistrict civil actions that the potential for conflicting, disorderly, chaotic judicial action is the greatest," thereby "present[ing] one of the strongest reasons . . . for coordinated pretrial proceedings").

The Rule 23 analysis in each putative class action will require assessment of the same core facts against the Rule's commonality and predominance requirements. *See* Fed. R. Civ. P. 23(a)(2), (b)(3). Each putative class action complaint has proposed generally similar common questions of fact and similar types of common legal issues. *See* NY Compl. ¶ 180, CO Compl. ¶ 261, NJ Compl. ¶ 184; MA Compl. ¶ 190; *see also supra* table at p. 4. Unison does not agree that the answers to these questions are common to all class members, or that the common issues (if any) predominate over individual ones, but *whether Rule 23 is satisfied* will be the same across all actions. The determination of whether class certification is appropriate will ultimately require the court to examine the customer experience, Unison's disclosures, Unison's procedures, and written agreements between Unison and its customers. *Id.* None of those things materially varied by state. Thus, leaving these cases in four different districts presents the very real possibility of courts

reaching varying and conflicting decisions on class certification issues that are fundamentally based on the same underlying facts and circumstances.

The Related Actions also are unlikely to represent the final universe of class litigation regarding Unison's HomeOwner Agreements. The theory of liability has already attracted plaintiffs' counsel in multiple jurisdictions nearly simultaneously. As additional cases are filed, a substantial risk exists that overlapping classes from the same pool of homeowners will be proposed before multiple courts with no mechanism for coordination. A statewide consolidated putative class action is already pending in California—the only state where future class actions would not be removable to federal court—so all future class actions (and either all or almost all similar individual actions) will be eligible to be part of the multidistrict litigation. Section 1407 transfer and consolidation is uniquely suited to address this dynamic. Under Panel Rule 7.1, new federal actions can be transferred to the transferee court as a tag-along action. A single multidistrict proceeding would provide an ongoing, structured mechanism for coordinating class certification determinations as new actions are filed, preventing the piecemeal certification of overlapping statewide classes in uncoordinated proceedings. *See In re Fisher-Price Rock N' Play Sleeper Mktg.*, 412 F. Supp. 3d at 1358–59 (consolidating putative class actions asserting both federal and statewide claims to "prevent inconsistent pretrial rulings, including with respect to class certification"). There is no alternative comparable mechanism to ensure that class definitions, class periods, and class notices remain consistent and non-duplicative.

***3. No Action Is Significantly More Advanced Than the Others.***

As explained above, each of the Related Actions is in the very early stages, with no dispositive motions filed and no discovery exchanged in most actions. Where, as here, none of the constituent actions is "significantly [more] advanced" than others, that factor weighs in favor of consolidation. *In re TD Bank, N.A., Gift Card Fees Litig.*, 703 F. Supp. 2d 1380, 1381 (J.P.M.L.

2010); *see also In re Generali Covid-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020) ("With all actions in their initial stages, the benefits of centralization can be obtained from the outset.").

### C. Consolidation Will Serve the Convenience of the Parties and Witnesses.

Finally, consolidation of the Related Actions will serve the convenience of the parties and witnesses. Elimination of duplicative discovery serves this purpose. Consolidation will also serve plaintiffs' convenience because it will not subject them to any litigation-related travel —plaintiffs will be deposed in their current geographic locations and, to the extent any action proceeds to trial, the cases will be remanded to the districts in which plaintiffs elected to bring them.[13] And as shown *infra*, the Eastern District of New York will be the most convenient district.

## II. TRANSFER TO THE EASTERN DISTRICT OF NEW YORK IS APPROPRIATE.

The Panel should transfer the Related Actions to the Eastern District of New York because the factors the Panel considers in determining the appropriateness of the transferee forum weigh in favor of the Eastern District of New York.

First, the first-filed putative class action is already pending before Judge Vitaliano in the Eastern District of New York, and no other district has more than one Related Action pending there. *See In re Beyond Meat, Inc., Protein Content Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 3d 1370, 1371 (J.P.M.L. 2023) (transferring to first-filed district). Second, the District is in an easily accessible metropolitan area (Brooklyn, New York), including for plaintiffs and counsel in the nearby NJ, MA, and DC Actions. *See In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (transferring to "an accessible metropolitan location"). Third, Judge Vitaliano is

[13] Further, plaintiffs' counsel in the NY Action and the CA state putative class action are the same, preventing any inconvenience that could arise with respect to any attorney travel, and also weighing in favor of informal coordination between the MDL court and the CA state court.

plainly qualified. He has presided over dozens of putative and certified class actions, adjudicated cross-motions for summary judgment in complex actions requiring simultaneous adjudication of federal and state law issues, and served on the Second and Ninth Circuit Courts of Appeals by designation multiple times throughout his judicial career.[14] *See In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977) (considering the caseload of potential transferee districts). And even beyond Judge Vitaliano, the Eastern District of New York has a deep bench of judges experienced in complex class action and consumer matters, including numerous MDLs over the years, who would also be well-qualified to handle this matter.[15] Moreover, New York is one of Unison's largest states by value and volume which weighs in favor of centralizing the actions there. Lehner Decl. ¶ 5; *see In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F. Supp. 3d 1372, 1374 (J.P.M.L. 2015) (transferee district has a "significant nexus to th[e] litigation" where certain events related to claims in the litigation occurred there and thus, documentary evidence and witnesses concerning those events are likely to be located in the district).

[14] *See, e.g.*, Class Action Experience: *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010); *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545 (E.D.N.Y. 2012); *Flagler Auto., Inc. v. Exxon Mobil Corp.*, 582 F. Supp. 2d 367 (E.D.N.Y. 2008); Complex Federal / State Experience: *Brooklyn Heights Ass'n v. National Park Serv.*, 818 F. Supp. 2d 564 (E.D.N.Y. 2011); *Berman v. City of New York*, 2012 WL 13041996 (E.D.N.Y. Oct. 3, 2012); and Appellate Experience: *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781 (9th Cir. 2024); *Samake v. Thunder Lube, Inc.*, 24 F.4th 804 (2d Cir. 2022).

[15] Since 2006, at least fifteen MDLs have been transferred to the Eastern District of New York, the majority of which have involved class actions and/or consumer protection claims.

## CONCLUSION

For the foregoing reasons, Unison respectfully requests that the Panel transfer and consolidate the Related Actions, as well as any tag-along actions subsequently filed, to Judge Eric N. Vitaliano in the Eastern District of New York for coordinated pretrial proceedings.

Dated: August 13, 2026

Respectfully submitted,

GOODWIN PROCTER LLP

*/s/ Matthew S. Sheldon*
Matthew S. Sheldon
1900 N Street, N.W.
Washington, D.C. 20036
Tel.: (202) 346-4027
Fax: (202) 204-7302
MSheldon@goodwinlaw.com

Valerie A. Haggans
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
VHaggans@goodwinlaw.com

*Attorneys for Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Unison Midgard Holdings LLC, and Odin New Horizon Real Estate Fund LP*