**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Unison "HomeOwner Agreement" Equity Option Contract, Marketing and Sales Practices Litigation | MDL No. 3201 |

**PLAINTIFFS' JOINT OPPOSITION TO DEFENDANTS' MOTION FOR TRANSFER TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 2

A. The pending cases ..... 2

B. Plaintiffs' counsel's proposed alternatives to centralization ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 7

I. Transfer and Consolidation Will Not Achieve Judicial Efficiency or Convenience ..... 7

A. Transfer is unnecessary because Plaintiffs are willing to informally coordinate to achieve efficiencies and reduce duplication of efforts ..... 7

B. Because the cases involve real property, centralization will create inefficiency by introducing a jurisdictional question into this litigation. ..... 9

C. Transfer does not promote efficiency because there is no risk of inconsistent rulings in these cases involving distinct classes ..... 12

II. Defendants have failed to establish common fact questions that justify transfer ..... 13

A. The arbitration question is not a common one and should not delay litigation for plaintiffs who can never be bound to arbitrate ..... 13

B. Whether the agreements are "loans" or "options," or subject to arbitration, is a legal question of statutory and contractual interpretation, not a common factual question ..... 14

C. Any common facts at issue are largely undisputed, not complex, and any putative disputes do not outweigh other differences ..... 17

III. In the alternative, if the actions are consolidated, they should be transferred to the Northern District of California for resolution of jurisdictional issues. ..... 19

CONCLUSION ..... 20

**TABLE OF AUTHORITIES**

**Page**

*Bigio v. Coca-Cola Co.*,
239 F.3d 440 (2d Cir. 2000) ....................9

*Eldee-K Rental Props., LLC v. DIRECTV, Inc.*,
748 F.3d 943 (9th Cir. 2014) ....................9, 10

*Erica P. John Fund, Inc. v. Halliburton*,
563 U.S. 804 (2011) ....................13

*In re: Am. Exp. Co. Anti-Steering Rules Antitrust Litig.,*
657 F. Supp. 2d 1365 (J.P.M.L. 2009) ....................8

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
669 F. Supp. 3d 1375 (J.P.M.L. 2023) ....................12

*In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.,*
804 F.Supp.2d 1376 (J.P.M.L.2011)....................2, 6, 7

*In re Dish Wireless L.L.C. Commc'n Towers Cont. Litig.,*
No. MDL 3182, 2026 WL 1659414 (J.P.M.L. June 4, 2026)....................6

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*,
446 F. Supp. 242 (J.P.M.L. 1978) ....................7

*In re Enhanced Recovery Co., LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*,
363 F. Supp. 3d 1375 (J.P.M.L. 2019) .................... *passim*

*In re Facebook Internet Tracking Litig.*,
844 F. Supp. 2d 1374 (J.P.M.L. 2012) ....................2

*In re FCA US LLC "Letter 311" Lab. Cont. Litig.*,
778 F. Supp. 3d 1380 (J.P.M.L. 2025) ....................14, 15

*In re Generali COVID-19 Travel Ins. Litig.*,
509 F. Supp. 3d 1365 (J.P.M.L. 2020) ....................19

*In re Genetically Modified Rice Litig.*,
764 F.3d 864 (8th Cir. 2014) ....................10

*In re Harvest Entities Fair Lab. Standards Act & Wage & Hour Litig.*,
584 F. Supp. 3d 1380 (J.P.M.L 2022)....................8, 9

*In re Healthextras Ins. Mktg. and Sales Pracs. Litig.*
24 F. Supp. 3d 1376 (J.P.M.L. 2014) ....................17

*In re Huel, Inc., Heavy Metal Prods. Liab. Litig.*,
829 F. Supp. 3d 1375 (J.P.M.L. 2026) ....................................................................9

*In re: Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Prods. Liab. Litig.*,
883 F. Supp. 2d 1339 (J.P.M.L. 2012) ....................................................................7

*In re Ivy*,
901 F.2d 7 (2d Cir. 1990) ....................................................................................11

*In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig*.,
MDL No. 3052, ECF No. 216 (J.P.M.L. June 2, 2023) ..............................................17, 18

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.,*
959 F. Supp. 2d 1375 (J.P.M.L. 2013) ....................................................................7

*In re Magic Marker Sec. Litig.*,
470 F. Supp. 862, (J.P.M.L. 1979) .........................................................................18

*In re: Pub. Recs. Collection Fair Credit Reporting Act (FCRA) Litig*.,
641 F. Supp. 2d 1382 (J.P.M.L. 2009) ..................................................................17

*In re Real Est. Transfer Tax Litig.*,
895 F. Supp. 2d 1350 (J.P.M.L. 2012) ..............................................................16, 17

*In re Samsung Plasma Television Prods. Liab. Litig.*,
322 F. Supp. 3d 1380 (J.P.M.L. 2018) ..................................................................12

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,
97 F.3d 1050, 1055 (8th Cir. 1996),.......................................................................13

*In re Title Ins. Real Est. Settlement Procs. Act (RESPA) & Antitrust Litig.*, 5
60 F. Supp. 2d 1374 (J.P.M.L. 2008) ..............................................................13, 18

*In re Truck Accident Near Alamagordo***,**
387 F. Supp. 732 (J.P.M.L. 1975) .......................................................................6, 19

*In re Uber Techs., Inc., Wage & Hour Emp. Pracs.*,
158 F. Supp. 3d 1372 (J.P.M.L. 2016) ................................................................9, 18

*Jesinoski v. Countrywide Home Loans, Inc.*,
574 U.S. 259 (2015)................................................................................................16

*Kingsborough v. Sprint Commc'ns Co., L.P.*,
673 F. Supp. 2d 24, 30-35 (D. Mass. 2009)........................................................10, 11

*Minichiello Realty Associates, Inc. v. Britt*,
460 F. Supp. 896 (D.N.J. 1978)
*aff'd*, 605 F.2d 1196 (3d Cir. 1979) ....................10

*Prawoto v. PrimeLending*,
720 F. Supp. 2d 1149 (C.D. Cal. 2010) ....................10

**STATUTES**

15 U.S.C. § 1639c(e) ....................15

28 U.S.C. § 1407 ....................6

N.Y. C.P.L.R. § 507 ....................10

## INTRODUCTION

The undersigned counsel represents plaintiffs in the four proposed class actions that Defendants Unison Agreement Corp., Unison Investment Management, LLC, Real Estate Equity Exchange, Inc., Unison Midgard Holdings LLC, and Odin New Horizon Real Estate Fund LP (collectively "Defendants" or "Unison"), have moved to transfer and consolidate for pretrial coordination in (1) the United States District Court for the Eastern District of New York, *Coffin v. Unison Agreement Corp.*, No. 1:26-cv-01587-ENV-TAM ("New York Action"), (2) the United States District Court for the District of Colorado, *Kane et al. v. Unison Agreement Corp. et al.*, No. 1:26-cv-01444-GPG-NRN ("Colorado Action"), (3) the United States District Court for District of New Jersey, *Santaniello v. Unison Agreement Corp.*, No. 2:26-cv-07117-EP-JSA ("New Jersey Action"), and (4) the United States District Court for the District of Massachusetts, *Cuvellier v. Unison Agreement Corp.*, No. 3:26-cv-30126-MGM ("Massachusetts Action"). They join in this opposition to Defendants' Motion for Transfer.[1]

This Panel should deny Defendants' Motion for Transfer because Defendants have failed to satisfy the requirements of 28 U.S.C. § 1407. Transfer would neither promote convenience nor further the just and efficient conduct of the underlying actions. To the contrary, Plaintiffs' counsel is already coordinating to avoid duplicative discovery and to achieve other efficiencies. Transfer would additionally create subject matter jurisdiction issues in the transferee court that would not otherwise exist. There is no meaningful risk of inconsistent rulings because the actions involve distinct state laws, plaintiffs, and classes. Defendants likewise fail to identify sufficient

[1] Two individual actions in the United States District Court for the District of Columbia, *Evans v. Unison Agreement Corp.*, No. 1:26-cv-00999-RC, J.P.M.L. Dkt. 1-9, (D.C. Action), and the United States District Court for the District of Maryland, *Franciscchetti v. Unison Agreement Corp.*, No. 1:26-cv-03341-JRR, J.P.M.L. Dkt. 7 (Maryland Action), also oppose transfer and have or will submit separate oppositions.

common questions of disputed fact, relying instead on common *legal* questions that do not justify transfer.[2] In sum, Defendants have failed to meet their burden of establishing that centralization—a "last solution"—is warranted. *In re Best Buy Co., Inc., California Song–Beverly Credit Card Act Litig.,* 804 F.Supp.2d 1376, 1378 (J.P.M.L. 2011).

## RELEVANT BACKGROUND

### A. The pending cases

The cases Defendants seek to transfer and consolidate challenge Defendants' conduct relating to its "Unison HomeOwner Agreements." Under these agreements, Defendants provide homeowners with an upfront cash advance in exchange for a significant share of homeowners' home equity (oftentimes 70%). The Agreement is designed so that homeowners almost always will repay the initial advance, plus much more, at the end of the term, despite Unison's representations that the Agreements are interest free and do not create debt. Unison secures its interest in repayment by placing a lien on homeowners' properties, using deeds of trust or mortgages depending on state law requirements.

To ensure that homeowners are protected and informed when using such products, the states of New York, Colorado, New Jersey, and Massachusetts have enacted statutory and regulatory schemes governing consumer credit and mortgage lending activity. Defendants claim that they are not subject to these protections because their product is not a loan, but rather an

[2] Should this Panel grant transfer, Plaintiffs request that the litigation be renamed to reflect a "neutral description of plaintiffs' allegations." *In re Facebook Internet Tracking Litig.*, 844 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012). The current case caption—"In re Unison 'HomeOwner Agreement' Equity Option Contract, Marketing, and Sales Practices Litigation"—embeds an improper legal conclusion: that Defendants' product is an "Option Contract." Plaintiffs allege that Defendants mislabel their Agreement as an "Option Contract" to evade credit, mortgage, and consumer protection laws. *See, e.g.*, Colorado Action Complaint ¶¶ 67-80, J.P.M.L. Dkt. 1-6. Plaintiffs therefore propose that the term "Option" be removed from the caption and that the litigation be renamed to "In re Unison 'HomeOwner Agreement' Equity Contract, Marketing, and Sales Practices Litigation."

"option contract." As described in more detail below, each of these cases raises distinct claims on behalf of non-overlapping classes under the laws of the states in which they were brought.

**New York Action.** Plaintiffs Gerald Coffin and Dawn Whitbeck (collectively, "New York Plaintiffs") filed their operative complaint against Unison Agreement Corporation, Unison Investment Management, LLC, and Odin New Horizon Real Estate Fund LP, on behalf of a proposed class of New York consumers on May 11, 2026. *Coffin v. Unison Agreement Corp.*, No. 1:26-cv-01587-ENV-TAM, J.P.M.L. Dkt. 1-5. Ms. Whitbeck's Unison Agreement does not include an applicable arbitration agreement. Declaration of Beth Terrell ("Terrell Dec."), ¶ 6.

New York Plaintiffs allege that Defendants, through their actions directed at New York consumers, have violated the New York General Obligations Law, New York's high-cost mortgage lending laws, and New York's statutory prohibitions on deceptive business practices and false advertising. They also allege that Defendants made residential mortgage loans without the license required by New York's Department of Financial Services and that they exercised improper influence over appraisals in connection with their Agreements. Among other things, Plaintiffs seek equitable reformation of any security interests Defendants maintain on New York properties, as well as refund of unlawful sums paid to Unison.

**Colorado Action.** Plaintiffs Katharine Kane, Charles Kane, Jamie Williams, Alicia Williams, and Douglas Clayton (collectively, "Colorado Plaintiffs") filed their operative complaint against Unison Agreement Corporation, Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc. on behalf of a proposed class of Colorado consumers on June 8, 2026. *Kane v. Unison Agreement Corp.*, No. 1:26-cv-01444-GPG-NRN, J.P.M.L. Dkt. 1-6. Neither the Kanes' nor the Williams' Unison Agreements include an applicable arbitration agreement. Declaration of Elizabeth Aniskevich ("Aniskevich Dec.") ¶ 6.

Colorado Plaintiffs allege that Defendants, through their actions directed at Colorado consumers, have violated the Colorado Uniform Consumer Credit Code, Colorado's residential mortgage lending laws, Colorado's reverse mortgage laws, and that Defendants have extended residential mortgage loans without the license required by Colorado's Division of Real Estate. Colorado Plaintiffs also allege that the Unison Agreement is unconscionable and that Defendants engaged in unfair and/or deceptive business practices under the Colorado Consumer Protection Act. Among other things, Colorado Plaintiffs seek equitable relief to void, rescind, terminate, and/or reformulate Defendants' Agreements as well as an order that the Clerk and Recorder's Offices throughout Colorado release all documents associated with consumers' respective Agreements.

**New Jersey Action.** Plaintiffs David Santaniello, Rosanne D. Santaniello, and Luis Meneses (collectively, "New Jersey Plaintiffs") filed their operative complaint against Unison Agreement Corporation, Real Estate Equity Exchange Inc., Unison Investment Management LLC, and Unison Midgard Holdings LLC, on behalf of a proposed class of New Jersey consumers on June 15, 2026. *Santaniello v. Unison Agreement Corp.*, No. 2:26-cv-07117-EP-JSA, J.P.M.L. Dkt. 1-7. Declaration of David Nagdeman ("Nagdeman Dec.") ¶ 3.

New Jersey Plaintiffs allege that Defendants, through their actions directed at New Jersey consumers, have violated New Jersey's consumer protection laws, New Jersey's consumer contract laws, and New Jersey's residential mortgage lending laws. Among other things, they allege that Defendants engaged in unconscionable, abusive, deceptive, or unfair conduct in violation of the New Jersey Consumer Fraud Act and have extended residential mortgage loans and collected charges for doing so without the license required by New Jersey's Department of Banking and Insurance. Among other things, Plaintiffs seek equitable reformation of any security

interests Defendants maintain on New Jersey properties, as well as refund of unlawful sums paid to Unison.

**Massachusetts Action.** Plaintiffs Anne Cuvellier and David Hills (collectively "Massachusetts Plaintiffs") filed their operative complaint against Unison Agreement Corporation, Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc. on behalf of a proposed class of Massachusetts consumers on August 5, 2026. *Cuvellier v. Unison Agreement Corp*., No. 3:26-cv-30126-MGM, J.P.M.L. Dkt. 1-8. Neither of the named Massachusetts Plaintiffs' Unison Agreements includes an applicable arbitration agreement. Declaration of Shennan Kavanagh ("Kavanagh Dec.") ¶ 6.

Massachusetts Plaintiffs allege that Defendants, through their actions directed against Massachusetts consumers, violated Massachusetts state law and regulations, including, without limitation, the Massachusetts Consumer Protection Act, the Massachusetts Consumer Credit Cost Disclosure Act, as well as Massachusetts laws governing mortgage lending and reverse mortgage lending. Massachusetts Plaintiffs have also brought a quiet title action under state law in which they seek a judgment declaring that Defendants have no valid lien, title, or interest in their homes and ordering cancellation of Defendants' security instruments.

### B. Plaintiffs' counsel's proposed alternatives to centralization.

Plaintiffs' counsel are public interest attorneys who have extensive experience in consumer protection and class action litigation. *E.g*. Terrell Dec., ¶ 1; Aniskevich Dec., ¶ 1; Nagdeman Dec., ¶ 1; Kavanagh Dec., ¶ 1; Declaration of David Yellin ("Yellin Dec.") ¶ 1.[3] They have been collaborating on the cases Defendants seek to transfer and share Defendants' interest in avoiding duplication of efforts and drawn-out proceedings. Terrell Dec., ¶¶ 10, 14; Aniskevich

[3] Although the D.C. Action has filed a separate opposition to transfer, the D.C. Action is in coordination with the class action cases.

Dec., ¶ 12; Nagdeman Dec., ¶ 7; Kavanagh Dec., ¶ 11; Yellin Dec. ¶ 8. Accordingly, they have consistently affirmed their willingness to work with Unison, and among themselves, to coordinate the various actions, including discovery, and to achieve other efficiencies as appropriate. Terrell Dec., ¶ 16; Aniskevich Dec., ¶ 12; Nagdeman Dec., ¶ 7; Kavanagh Dec., ¶ 11; Yellin Dec. ¶ 8. When Unison first indicated that it was exploring options for consolidating proceedings, Plaintiffs' counsel in the New York action expressed their openness to coordinating discovery. New York Action, July 21, 2026, Tr. of Initial Case Management Conference, Ex. 1 at 12:5-10 ("[W]e're always open to proposals of how to coordinate discovery to make it more streamlined…"); Terrell Dec., ¶ 11. Plaintiffs' counsel proposed the alternative of voluntary consolidation through Section 1404 transfer to the Northern District of California, where Unison is headquartered and within which district a class action on behalf of California consumers is pending in state court. Terrell Dec., ¶ 12. Unison rejected that proposal and filed its petition for transfer on August 13, 2026.

## LEGAL STANDARD

Consolidation under 28 U.S.C. § 1407 is not appropriate unless it satisfies every statutory factor. *In re Truck Accident Near Alamagordo***,** 387 F. Supp. 732, 733 (J.P.M.L. 1975). And even then, it "should be the last solution after considered review of all other options." *In re Dish Wireless L.L.C. Commc'n Towers Cont. Litig.,* No. MDL 3182, 2026 WL 1659414, at *2 (J.P.M.L. June 4, 2026) (quoting *In re Best Buy Co.,* 804 F. Supp. 2d at 1378). The proponent of centralization bears a heavier burden to show that this last resort is warranted "[w]here only a minimal number of actions are involved[.]" *In re Enhanced Recovery Co., LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.*, 363 F. Supp. 3d 1375, 1377 (J.P.M.L. 2019). And the Panel is "disinclined to take into account the mere possibility of future filings in [its] centralization calculus." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab.*

*Litig.,* 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013); *see also In re: Intuitive Surgical, Inc., Da Vinci Robotic Surgical Sys. Prods. Liab. Litig.*, 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) ("While proponents maintain that this litigation may encompass 'hundreds' of cases or 'over a thousand' cases, we are presented with, at most, five actions.").

## ARGUMENT

### I. Transfer and Consolidation Will Not Achieve Judicial Efficiency or Convenience

#### A. Transfer is unnecessary because Plaintiffs are willing to informally coordinate to achieve efficiencies and reduce duplication of efforts.

Because centralization is a measure of last resort, *see In re Best Buy Co.*, 804 F. Supp. 2d at 1378, transfer is not warranted when informal coordination will achieve Section 1407's objectives. That is the case here where Plaintiffs are actively coordinating across the underlying actions, and are willing to continue to do so. Transfer is not appropriate.

Before any coordination petition was ever filed, Plaintiffs' counsel expressed their willingness to coordinate discovery, or even to voluntarily consolidate under Section 1404.[4] *See, e.g.*, Terrell Dec., ¶¶ 11 - 12; *see also In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (describing "suitable alternatives to Section 1407 transfer," including "stipulat[ing] that any discovery relevant to more than one action may be used in all [the] actions" and making depositions applicable in all actions). Rather than further explore Plaintiffs' proposals, Defendants filed their motion to transfer.

---

[4] Subsequent to their offer, Plaintiffs' counsel identified the jurisdictional issues raised by the local action doctrine. *See* Section I.B. Although Plaintiffs' Counsel now believes that voluntary consolidation would not promote efficiency, their offer at the time was made in good faith and is emblematic of their continued willingness to coordinate to avoid duplication or protracted proceedings. Terrell Dec., ¶ 13.

While Plaintiffs believe that a consolidated proceeding is not the most efficient path forward, they are open and willing to informally coordinate discovery and other matters to ensure the proceedings are litigated efficiently. *See In re: Am. Exp. Co. Anti-Steering Rules Antitrust Litig.,* 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009) (denying transfer of six actions where informal coordination was ongoing). Plaintiffs are already actively coordinating across the various actions, and in several instances, the same counsel serves on more than one case and (like Defendants) share an interest in avoiding duplicative discovery and efforts. Terrell Dec., ¶¶ 14 - 15; Aniskevich Dec., ¶¶ 12 - 14; Kavanagh Dec., ¶¶ 11 - 14; Yellin Dec., ¶¶ 8 - 9. Four of the firms opposing consolidation also represent plaintiffs in state actions against Unison; a California class action and a D.C. public interest organization standing action. Terrell Dec., ¶ 15; Aniskevich Dec., ¶ 14; Kavanagh Dec., ¶ 13; Yellin Dec., ¶ 9. They have confirmed their willingness to coordinate discovery with the federal actions. Terrell Dec., ¶ 16 - 17; Aniskevich Dec., ¶ 15; Kavanagh Dec., ¶ 15; Yellin Dec., ¶ 10. Plaintiffs in the federal actions are also willing to participate in a governance structure to facilitate coordination as appropriate. Terrell Dec., ¶ 18; Aniskevich Dec., ¶ 16; Nagdeman Dec., ¶ 10; Kavanagh Dec., ¶ 16; Yellin Dec., ¶ 11. Finally, one firm (Goodwin Procter LLP) represents Defendants in all four of the putative class actions that have joined this opposition,[5] and where the most voluminous discovery is likely to occur, further facilitating coordination. *See, e.g., In re Harvest Entities Fair Lab. Standards Act & Wage & Hour Litig.*, 584 F. Supp. 3d 1380, 1381 (J.P.M.L 2022) (informal coordination was preferable where defendants were represented by just three firms). J.P.M.L. Dkt. 1-5 at 3, 1-6 at 3; 1-8 at 2.

[5] In the New Jersey Action, Goodwin Procter has organized at least one meet and confer and has expressed to Plaintiffs' counsel that it intends to represent Defendants in that action. *See* Nagdeman Dec., ¶ 9.

The Panel regularly finds informal coordination of this kind to be preferable to formal centralization in petitions involving just a handful of actions like this one. *See, e.g., In re Huel, Inc., Heavy Metal Prods. Liab. Litig.*, 829 F. Supp. 3d 1375, 1376 (J.P.M.L. 2026) (denying transfer of five actions and one tag-along, where several parties indicated willingness to informally coordinate); *In re Uber Techs., Inc., Wage & Hour Emp. Pracs.*, 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016) (denying transfer of seven actions, with ten potential tag-along actions because "voluntary coordination [was] preferable to centralization"). Because Plaintiffs' informal coordination is already in place and will amply support just and efficient pretrial proceedings, formal transfer is not warranted.

**B. Because the cases involve real property, centralization will create inefficiency by introducing a jurisdictional question into this litigation.**

These actions, all of which concern real property located in separate states, are uniquely ill-suited to centralization because the local action doctrine calls into doubt whether any transferee court would have subject matter jurisdiction to hear the combined cases. No such doubt exists as to the transferor courts' jurisdiction. Thus, coordination will introduce inefficiencies into pretrial proceedings by injecting a jurisdictional question that would never arise but for transfer.

The local action doctrine provides that federal courts do not have subject matter jurisdiction to hear cases involving real property located in a different state. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 449-50 (2d Cir. 2000) (courts cannot exercise jurisdiction over actions involving real property outside the bounds of their state); *Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943, 948 (9th Cir. 2014) (observing that "a majority of federal courts have concluded that the local action doctrine is a rule of subject matter jurisdiction"); *Minichiello Realty Associates, Inc. v. Britt*, 460 F. Supp. 896, 897 (D.N.J. 1978), *aff'd*, 605 F.2d 1196 (3d Cir.

1979) (declaring that the local action doctrine "is jurisdictional and may be dealt with sua sponte by the court"); *Kingsborough v. Sprint Commc'ns Co., L.P.*, 673 F. Supp. 2d 24, 30-35 (D. Mass. 2009) (local action doctrine is a matter of subject matter jurisdiction). It is a rule with both an "ancient heritage" and modern applicability. *See, e.g., Eldee-K*, 748 F.3d at 946-48 (tracing the doctrine's roots in English common law and its early adoption by the U.S. Supreme Court, before affirming lower court's dismissal of case seeking injunction under California unfair competition law against unauthorized entry in another state).

Actions like Plaintiffs', which seek a determination of interests in real property,[6] are often held to be local and not subject to the jurisdiction of federal courts in other states. *See, e.g., Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1158 (C.D. Cal. 2010) (rescission of mortgage transaction creating a security interest in land); *Minichiello*, 460 F. Supp. at 898 (observing that the doctrine encompasses "all actions arising out of a local subject, or a local right or interest, even though the remedy sought is merely money damages."); *Kingsborough*, 673 F. Supp. 2d at 33 (holding that action requiring "resolution of title and land ownership issues" was local). And New York statutory law would suggest that actions involving interests in real property are local in nature. *See* N.Y. C.P.L.R. § 507; *see also Eldee-K*, 748 F.3d at 950 (applying state venue statute to determine whether action was local).

Because Section 1407 transfer "does not expand the jurisdiction of the district court to which the cases are transferred," *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014), the local action doctrine raises serious questions about any transferee court's subject

[6] *See, e.g.,* Massachusetts Action Complaint, J.P.M.L. Dkt. -8at ¶ 286 (seeking "quiet title relief as to all properties encumbered by Defendants' mortgages securing Unison HomeOwner Agreements."); *id.* at ¶ 299 (requesting that Unison Agreements be declared "void, voidable, invalid, cancelled, and/or otherwise unenforceable")

matter jurisdiction to preside over the combined actions. Plaintiffs would be obligated to put that doubt to rest at the outset, or else risk having their cases dismissed at some later date after they had already invested significant time and resources in their prosecution. *See, e.g., Kingsborough*, 673 F. Supp. 2d at 35 (dismissing class action for lack of subject matter jurisdiction at final approval stage upon determining local action doctrine applied). That will delay ordinary pretrial proceedings, as the parties brief and the transferee court decides the threshold question. In the event of an appeal, that delay could stretch for years. None of that time or effort would need to be expended in the transferor courts, where subject matter jurisdiction is not in question.

This particular jurisdictional issue, which would only occur through transfer to a different venue, distinguishes this consolidation request from others that the Panel routinely considers. Defects in diversity and federal question jurisdiction, for example, are venue agnostic, such that coordination of cases raising those issues does not present the same efficiency concerns and resolving them in one proceeding may actually advance efficiency. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (jurisdictional issue was "capable of arising in hundreds or even thousands of cases" making it "particularly well-suited for multidistrict transfer"). Here, however, there is no similar efficiency to be gained because consolidation will result in a jurisdictional question that, absent transfer, the parties would not need to address.

The results of inefficiency are especially severe in this case, as the HomeOwner Agreement limits consumers from exercising agency and control over their homes. Terrell Dec., ¶ 7; Aniskevich Dec., ¶ 7; Nagdeman Dec., ¶ 5; Kavanagh Dec., ¶ 7. Indeed, since filing their suits, Plaintiffs' counsel have heard from a number of homeowners about the harm they are suffering because of Defendants' liens on their homes, which prevent or significantly burden them in refinancing, obtaining other loans, and moving, among other limitations. Aniskevich

Dec., ¶¶ 9 - 10; Kavanagh Dec., ¶¶ 8 - 9. Therefore, many homeowners may need expeditious interim relief. Terrell Dec., ¶ 8; Aniskevich Dec., ¶ 11; Nagdeman Dec., ¶ 6; Kavanagh Dec., ¶ 10. In the event of transfer they would have nowhere to turn for that relief, at least until the jurisdictional question was resolved. Following transfer, the transferor court—which is ordinarily best-positioned to resolve such requests—would be without power to intervene. Meanwhile, the transferee court would be obligated to defer any substantive decisions until it confirmed its jurisdiction. Nothing in Section 1407 requires such a prejudicial result.

Plaintiffs do not ask the Panel to decide the jurisdictional question's merits. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1378 (J.P.M.L. 2023) (affirming that the Panel does not have power to decide questions going to jurisdiction). Rather, they contend that transferring these cases would generate previously non-existent threshold questions over subject matter jurisdiction, meriting immediate resolution in the transferor court. This would significantly undermine efficiency, such that coordination is not warranted.

**C. Transfer does not promote efficiency because there is no risk of inconsistent rulings in these cases involving distinct classes.**

Section 1407 does not promote efficiency where, as here, the actions "involve distinctly separate and non-overlapping putative classes" and "[t]hus, there is no threat of conflicting class certification rulings." *In re Samsung Plasma Television Prods. Liab. Litig.*, 322 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018).

Contrary to Defendants' contention, J.P.M.L. Dkt. 1-1 at 18, there is no risk of inconsistent class certification rulings because each of the underlying class actions involves claims on behalf of property owners in different states proceeding under their own respective state laws; the proposed classes do not overlap. *See In re Enhanced Recovery Co.*, 363 F. Supp. 3d at 1377 (concluding that actions involving "non-overlapping putative state classes of

consumers" presented "no substantial risk of conflicting pretrial rulings, particularly with respect to class certification"). Because any Rule 23 determination will turn on claims under distinct state laws, Unison is incorrect that the question of "whether Rule 23 is satisfied will be the same across all actions." J.P.M.L. Dkt. 1-1 at 18; *see, e.g., Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011) (The predominance analysis "begins, of course, with the elements of the underlying cause of action.").

To the extent any potential for differing pre-trial rulings exists across the underlying actions, such rulings would only be the result of variations in each state's laws and would not be avoided by centralization. *See In re Title Ins. Real Est. Settlement Procs. Act (RESPA) & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008) (denying centralization where the actions "encompass[ed] different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state"). Additionally, because the transferee court must still apply the respective state law in which the action was filed, *see, e.g., In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996), there is no efficiency to be gained from centralization.

## II. <u>Defendants have failed to establish common fact questions that justify transfer</u>

### A. The arbitration question is not a common one and should not delay litigation for plaintiffs who can never be bound to arbitrate.

Arbitrability is not a common question because, as Defendants concede, not all class members signed an applicable arbitration agreement. Among the twelve proposed class representatives in the underlying actions, for example, seven entered their HomeOwner agreements before Unison began including a mandatory arbitration provision in November or December 2019. Terrell Dec., ¶ 6; Aniskevich Dec., ¶ 6; Kavanagh Dec., ¶ 6; J.P.M.L. Dkt. 1-10,

¶ 4. That includes both named Plaintiffs in the Massachusetts Action. J.P.M.L. Dkt. 1-1 at 15 n.11. Accordingly, this question cannot satisfy Section 1407's requirements for transfer.

Defendants' argument also suffers from an additional defect: delaying consideration of non-arbitration plaintiffs' claims while the arbitration question is resolved would be both inefficient and prejudicial. *See* J.P.M.L. Dkt. 1-1 at 11 (July 17, 2026 Order) (the arbitration issue "will need to be resolved before any action may move forward."). Defendants have tried this line of reasoning elsewhere, without success. In the New York Action, for example, Defendants argued that the court should not take up the non-arbitration Plaintiff's claims until it had ruled on their motion to compel a second Plaintiff to arbitration. Judge Vitaliano denied that request and directed Defendants to brief the merits and arbitration issues concurrently. J.P.M.L. Dkt. 1-5 at 8**.** In the face of similar arguments regarding discovery in that action, Magistrate Judge Merkl expressed concern about prejudice and delay for the non-arbitration plaintiff. Ex. 1 at 32:23-24 ("I am concerned about essentially putting Ms. Whitbeck [non-arbitration plaintiff] on hold indefinitely without good cause."). Because the arbitration question is not a common one, centralization on this basis would only create inefficiency and injustice and is not warranted.

### B. Whether the agreements are "loans" or "options," or subject to arbitration, is a legal question of statutory and contractual interpretation, not a common factual question.

By its plain terms, Section 1407 requires the movant to demonstrate "common questions of fact." In contrast, the Panel has repeatedly explained that "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement." *In re FCA US LLC "Letter 311" Lab. Cont. Litig.*, 778 F. Supp. 3d 1380, 1382 (J.P.M.L. 2025). To avoid this outcome, Defendants attempt to shroud common legal questions under the guise of common factual ones. For example, the principal "common factual question" Defendants identify—whether the product is a "loan" or an "option"—is a classic legal issue of contract and statutory interpretation. *See* J.P.M.L. Dkt. 1-1 at

3 ("the nature and terms of the Unison HomeOwner Agreement"); *id.* at 5 ("Plaintiffs all allege that the HomeOwner Agreements are not equity option contracts but are instead undisclosed mortgage loans."); *id.* at 11 (same); *id.* at 12 (same). What is more, the answer to each of these legal questions depends on the separate state statutory schemes asserted in the underlying actions. The fact that Defendants' core "common question of fact" is actually a legal question weighs strongly against centralization. *See In re Enhanced Recovery Co.*, 363 F. Supp. 3d at 1377 (denying centralization where the only question was whether the defendant was "liable under the [Fair Debt Collection Practices Act] for [the] contents" of debt collection letters).

The other common "fact" identified by Unison — arbitrability —is, again, a legal question. Defendants themselves explain that the arbitrability issue "is a threshold question of federal law," J.P.M.L. Dkt. 1-1 at 11, that turns on whether their product is subject to TILA's prohibition against arbitration clauses in residential mortgage loans. *See* 15 U.S.C. § 1639c(e). Resolution of that question will depend on interpretation of TILA alongside the HomeOwner Agreement. *See In re FCA US LLC*, 778 F. Supp. 3d at 1382 (the "interpretation of [the collective bargaining agreements] are primarily legal—not factual—issues, whose resolution should require little, if any, discovery").

To the extent that any common facts are necessary to resolve the arbitrability question, Defendants' own litigation conduct confirms that they do not believe discovery is necessary to establish those facts, and that they view arbitrability as a principally legal issue. For example, in the underlying New York action, Defendants' counsel argued that the forthcoming motion to compel arbitration in that case would be "based on the agreement" alone. Ex. 1 at 32:23-24. And in a state court action filed in Washington, D.C., J.P.M.L. Dkt. 1-1 at 7 n.6, Defendants filed a motion to compel arbitration and stay proceedings before they had taken any discovery. They

argued, as a matter of law, that Unison's Agreements "are not a 'residential mortgage loan' precluded from arbitration by TILA or Regulation Z because they do not qualify as 'a consumer credit transaction.'"[7] Ex. 2. As a legal question, the arbitrability of these claims under TILA cannot justify transfer.

Finally, to the extent circuit courts may ultimately reach different conclusions regarding the enforceability of Defendants' arbitration agreement, circuit splits under TILA are not without precedent. As an example, in 2015, the Supreme Court resolved a years-long circuit split concerning TILA's timing requirements for rescission. *See Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015). In other words, Defendants cannot meet their burden under Section 1407 simply because they wish to avoid courts reaching differing conclusions as to whether the arbitration provisions are enforceable. *See In re Real Est. Transfer Tax Litig.*, 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (declining to centralize ten actions "[m]erely to avoid two federal courts having to decide the same issue" which "by itself, [is] usually not sufficient to justify Section 1407 centralization" (internal citation omitted)).

Defendants' other purported common factual questions fare no better. Whether Unison's representations are "deceptive," or whether its contract terms are "unconscionable," are not common to the underlying actions, for example, because they turn on distinct state law standards. *See* J.P.M.L. Dkt. 1-1 at 6 (listing examples of common legal questions identified in Plaintiffs' complaints). Similarly, whether Defendants extended a mortgage loan without a license as required by New York's Superintendent of Financial Services does not resolve whether Defendants failed to obtain the requisite license under the District of Columbia's Mortgage

---

[7] *NACA v. Unison Agreement Corp.* , No. 2026-CAB-000955, (D.C. Super. Ct.), Mot. to Compel Arbitration and Stay Proceedings, filed May 6, 2026 at 16.

Lender and Broker Act. *See* New York Action Complaint, ¶ 194, J.P.M.L. Dkt. 1-5; D.C. Action Complaint ¶¶ 270-72, J.P.M.L. Dkt. 1-9; *In re Healthextras Ins. Mktg. and Sales Pracs. Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying centralization because "whether the subject [insurance] policies in the District of New Jersey action were issued in conformance with New Jersey law, for example, has no bearing on whether the subject policies in the Northern District of Texas action were issued in conformance with Texas law"). Because they failed to present common factual questions in support of their motion, Defendants have not satisfied Section 1407's requirements.

### C. Any common facts at issue are largely undisputed, not complex, and any putative disputes do not outweigh other differences

Even to the extent that there are common questions of fact, not every common factual question or set of questions warrants consolidation under Section 1407, particularly if those facts are not particularly complex or seriously in dispute. *See, e.g., In re Pub. Recs. Collection Fair Credit Reporting Act (FCRA) Litig.*, 641 F. Supp. 2d 1382, 1382-83 (J.P.M.L. 2009) (denying transfer of nineteen actions where "movants…failed to convince [the Panel] that any common factual questions [were] sufficiently complex and/or numerous to justify Section 1407 transfer…"); *see, e.g., In re Real Est. Transfer Tax Litig.*, 895 F. Supp. 2d at 1351 (denying transfer of litigation involving "largely undisputed" factual questions after finding that centralizing the "few, disputed factual questions" would not outweigh "the inconvenience to the parties and the courts"); *In re Enhanced Recovery Co.*, 363 F. Supp. 3d at 1377 (denying centralization where there was no dispute over the contents of debt collection letters). For transfer to be appropriate, common disputed factual questions must outweigh competing factors that counsel against centralization. *See, e.g., In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 3052, ECF No. 216 at 2 (J.P.M.L. June 2, 2023) (transferring

three actions to existing MDL after determining that common factual core "outweighed" differences among legal theories). Here, because this litigation involves so few actions, Defendants "bear a strong burden of showing that the common factual questions are sufficiently complex and that the accompanying discovery will be so time consuming as to justify transfer under Section 1407." *In re Magic Marker Sec. Litig.*, 470 F. Supp. 862, 865 (J.P.M.L. 1979). Defendants do not meet that burden here.

The core facts underlying Plaintiffs' theories of liability under various state legal and regulatory regimes are not seriously in dispute. For example, Unison acknowledges that it provides homeowners with a lump sum payment in exchange for a right to equity in Plaintiffs' homes, and that it markets its products as "options" and tells homeowners that they do not take on debt. J.P.M.L. Dkt. 1-1 at 4-5. Although Unison disputes the *legal significance* of these facts, those legal questions do not satisfy Section 1407's requirements.

For any common factual questions that may be present, the parties can efficiently manage them through informal coordination. *See* Section I.A; *see also In re Uber Techs., Inc.*, 158 F. Supp. 3d at 1373 (concluding that "voluntary coordination [was] preferable to centralization" despite the actions sharing "some factual issues"). Finally, targeted state-specific discovery to develop claims under the distinct state regulatory regimes at issue in the underlying actions will not be duplicative and is not a proper basis for transfer. *See, e.g., In re Title Ins. Real Est. Settlement Procs. Act (RESPA)*, 560 F. Supp. 2d at 1376 (J.P.M.L. 2008) (denying centralization due to differences in state law and regulatory regimes). The Massachusetts Plaintiffs' requests for data on Massachusetts homeowners' agreements with Unison, for example, will not be duplicative of the New Jersey Plaintiffs' requests for data regarding New Jersey homeowners.

Defendants have failed to meet their heightened burden to show that this case presents common factual questions at all, let alone questions so complex or numerous that they justify transfer and consolidation of so few actions. Even if Defendants had met their burden, consolidation would not serve efficiency or convenience, so not all statutory factors are satisfied. *See In re Truck Accident Near Alamagordo*, 387 F. Supp. 732, 733 (J.P.M.L. 1975).

## III. In the alternative, if the actions are consolidated, they should be transferred to the Northern District of California for resolution of jurisdictional issues.

If the Panel determines that consolidation is warranted, it should transfer the cases to the Northern District of California for resolution of the jurisdictional question because it is a more convenient forum, given that Unison is headquartered there and a statewide class action against Unison is pending in a state court within that district. *See, e.g., In re Generali COVID-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020) (transferring to the district where at least one of the defendants was headquartered and maintained a principal place of business). Indeed, many of Defendants' arguments in favor of transfer to the Eastern District of New York apply with even greater force to centralization in the Northern District of California. For example, publicly available data suggests that California is Unison's largest market by far. Rating Report – Unison Trust 2024-1, Morningstar DBRS (June 5, 2024), Ex. 3 at 6, 12, 15. Documentary evidence and witnesses are also most likely to be located in the Northern District of California because Unison is headquartered there. J.P.M.L. Dkt. 1-1 at 19; *see also* Unison's Mem. in supp. of Pet. for Coordination and Appl. to Stay, Ex. 4 at 6, No. CGC-25-629062, November 19, 2025 (asking that California class actions be coordinated in San Francisco County because corporate representatives and witnesses are likely to be located there). Finally, the Northern District of California is an experienced transferee court, which currently has thirteen MDLs pending before it.

Defendants' other arguments do not favor the Eastern District of New York. For example, the Northern District of California is also an easily accessible metropolitan area.[8] The Northern District of California is the most appropriate transferee district.

## CONCLUSION

For the foregoing reasons, the Panel should deny Defendants' Motion for Transfer.

Dated: September 8, 2026

Respectfully Submitted,

**SINGLETON SCHREIBER, LLP**

*/s/ Elizabeth Aniskevich*
Elizabeth Aniskevich* (DC Bar No. 994603)
(with permission)
Jennifer Yadoo (DC Bar No. 1780435)
SINGLETON SCHREIBER, LLP
650 Massachusetts Avenue NW, Suite 600
Washington, DC 20001
Telephone: (619) 771-3473
eaniskevich@singletonschreiber.com
jyadoo@singletonschreiber.com

*Attorneys for Colorado Plaintiffs Katharine Kane, Charles Kane, Jamie Williams, Alicia Williams, Douglas Clayton, and Proposed Class*

**TERRELL MARSHALL LAW GROUP PLLC**

*/s/ Beth E. Terrell*
Beth E. Terrell* (WA Bar No. 26759)
Blythe Chandler (WA Bar No. 43387)
Eleanor Eagan (WA Bar No. 64463)
TERRELL MARSHALL LAW GROUP PLLC
1700 Westlake Avenue North, Suite 300
Seattle, Washington 98109
Telephone: (206) 816-6603
bterrell@terrellmarshall.com
bchandler@terrellmarshall.com
eeagan@terrellmarshall.com

*Attorneys for New York Plaintiffs Gerald Coffin, Dawn Whitbeck, and Proposed Class*

[8] And the D.C. Action was first filed in the Superior Court of the District of Columbia on February 5, 2026, before Defendants removed it to federal court. J.P.M.L. Dkt. 1-9 at 5, 67; Yellin Dec. ¶ 3; *see* J.P.M.L. Dkt. 1-1 at 18.

**LANGER GROGAN & DIVER P.C.**

/s/ *David Nagdeman*
David Nagdeman* (NJ Bar No. 529022025)
(with permission)
Kevin Walsh (NJ Bar No. 30511999)
LANGER, GROGAN & DIVER P.C.
1717 Arch Street, Suite 4020
Philadelphia, Pennsylvania 19103
Telephone: (215) 320-5660
dnagdeman@langergrogan.com
kwalsh@langergrogan.com

*Attorneys for New Jersey Plaintiffs David Santaniello, Rosanne D. Santaniello, and Luis Meneses and Proposed Class*

**NATIONAL CONSUMER LAW CENTER**

*/s/ Shennan Kavanagh*
Shennan Kavanagh* (MA Bar No. 655174)
(with permission)
Jennifer Wagner (MA Bar No. 716264)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Telephone: (617) 542-8010
skavanagh@nclc.org
jwagner@nclc.org

*Attorneys for Massachusetts Plaintiffs Anne Cuvellier, David Hills, and Proposed Class*

*Attorneys designated to accept service.