# Exhibit
# - 1 -

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X **Docket#**
GERALD COFFIN, : 26-cv-01587-ENV-TAM
:
Plaintiff, :
:
- versus - : U.S. Courthouse
: Brooklyn, New York
UNISON AGREEMENT CORP. et al., :
: July 21, 2026
Defendants :
--------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiff:**

**Beth E. Terrell, Esq.**
**Eleanor Eagan, Esq.**
Terrell Marshall Law Group PLLC
1700 Westlake Avenue North
Lake Union Building, Suite 300
Seattle, WA 98109

**Danielle F. Tarantolo, Esq.**
New York Legal Assistance Group
100 Pearl St., 19th Floor
New York, NY 10004

**Julie A. Howe, Esq.**
New York Legal Assistance Group
7 Hanover Square, 7th Floor
New York, NY 10004

(Appearances continue on next page)

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

**APPEARANCES CONTINUED**

For the Defendants: **Valerie A. Haggans, Esq.**
**Melissa L. Brumer, Esq.**
**Pream Akkas, Esq.**
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018

THE CLERK: This is Civil Cause for Initial Conference in docket 26-cv-1587, *Coffin v. Unison Agreement Corp. et al.*

Will the parties please state their appearances for the record starting with the plaintiffs?

MS. TERRELL: Good morning, your Honor. Beth Terrell from Marshall Law Group on behalf of plaintiffs and the proposed class.

I'm here with my colleagues Eleanor Eagan and Danielle Taratano. Tarantolo. I'm so sorry, Danielle.

MS. TARANTOLO: No problem. Good morning, your Honor.

THE COURT: Good morning, everybody.

MS. HOWE: Good morning, your Honor. Julie Howe of New York Legal Assistance Group also for plaintiffs.

THE COURT: All right. And for defendants?

MS. HAGGANS: Good morning, your Honor. Valerie Haggans of Goodwin Procter for the defendants.

MS. BRUMER: And Melissa Brumer also of Goodwin Procter for the defendant and I have with me observing Jules Martinez Alvarez and Pream Akkas.

THE COURT: Are they some of your summer associates or interns?

MS. BRUMER: They are a summer associate and a

junior associate.

THE COURT: All right. Well, they're welcome to observe and participate without entering a notice of appearance. This is a teaching court after all. Has been for decades.

So we are here today, as you know, for an initial conference. And I note of course that this case appears to have some various levels of procedural complexity insofar as there appear to be cases pending in other jurisdictions, there is a possibility of class action practice, there's a motion to compel arbitration. So I'd just like to understand, Ms. Terrell, the lay of the land and what you realistically think we should try to accomplish with this conference because I note of course that the defendants object to this preliminary discovery schedule and, you know, we'll get into all of that.

But first, I always start the initial conference by asking plaintiff's counsel to just give me a little bit of an overview in your own words on what the case is about. I'm of course familiar with the allegations in the complaint but always benefit from hearing how you'd like to describe it. So go ahead.

MS. TERRELL: Well, I guess I would describe the case as involving a relatively new form of financial

product that plaintiffs and defendants will disagree as to how it should be characterized and treated under the various state and federal laws.

And what we filed here in your court is a case that involves two plaintiffs, one of whom is subject to an arbitration clause and the other one who is not. That's of course the first layer of procedural complication, complexity.

And I guess what we would like to -- and it is true there are other cases that are pending in various jurisdictions. Defense counsel has mentioned some ideas of potentially seeking consolidation or coordination in some way. No proposal has been made to us in any of the cases where we are involved. I'm not aware of any proposals that have been made in the other cases. So I feel like it's premature to assume that that's going to occur. And I would love to just focus on how we can kind of get this case started today.

THE COURT: Okay. Do you have a sense of how many other cases are out there?

MS. TERRELL: I understand there are about ten but I will defer to others who may have a more refined sense of how many there are. And when I say cases, there are a number of different companies offering this product. Unison is one of them. And I believe there are

at least four if not six cases pending against Unison in both federal and state courts. We are involved in some of those cases but not all of them.

THE COURT: Okay. Thank you. And I feel confident defense counsel may have a different perspective on how many cases are pending and whether they're related.

Based on what you know of these other cases, and this is just based on my own curiosity, it doesn't necessarily influence what we do in terms of management of this case because as you are 100 percent correct, this is the only case pending before me, it's the only case in which I have any jurisdiction or authority.

Would the other cases, or at least some of them, potentially be included as putative class members in this case if your class certification motion were to be granted or do you know?

MS. TERRELL: They would not because this case is limited to New York residents.

THE COURT: Okay. All right. That's very helpful context. Thank you for that.

All right. And in terms of what your views are on how to kick things off, it seems as though you acknowledge that at least one of your plaintiffs is subject to arbitration but your argument is that one is

not?

MS. TERRELL: That's correct.

THE COURT: Okay.

MS. TERRELL: That's correct. Ms. Whitbeck is not subject to an arbitration clause. And so our proposal is that they are going to file a motion on the pleadings with regard to Ms. Whitbeck and a motion to compel with regard to Mr. Coffin.

And so we would suggest that phase one discovery proceed in accordance with your court's, you know, worksheet and case management order and preferences. And we have provided draft discovery to defense counsel that lays out the sort of information that we would need not only for the individual plaintiffs, or an individual plaintiff, but also for the class members so that the parties could engage in a fulsome conversation about resolution.

We thought we had reached agreement with defense counsel, but at the very least phase one discovery would go forward with regard to the named plaintiffs. They reflect a different position in the worksheet, so I think that's something to work out here today.

But I guess our position is that with regard to Ms. Whitbeck, there's no reason to wait. We should

proceed with phase one discovery with regard to the plaintiffs and those class members that are affected, and we think that that makes sense.

And then we also not surprisingly don't think that phase two discovery should wait until the Rule 12 motions have been disposed of. We think that there's a number of issues that are -- well, first of all, we think we're going to win, defeat their Rule 12 motion with regard to Ms. Whitbeck.

And so we would prefer to proceed mostly because our clients are older. This case has been pending since May. And these are issues that are important public interest to the residents of New York. And so we think the balance of equities weighs in favor of not only commencing phase one discovery, but also phase two discovery with regard to Ms. Whitbeck and the class members that she would represent who are not subject to arbitration clauses.

THE COURT: All right. Thank you. And without predicting or previewing what I will necessarily do in this particular case depending on the scope of the discovery that plaintiffs are seeking, I'm just going to advise the defendant's outright that in a fact intensive case such as this I really rarely stay discovery in its entirety pending motions to dismiss. I find it to be

very inefficient to try to regroup and start discovery a year and a half to two years into a case. And that is frankly how long some of these cases can take to get to that disposition of the original motion.

So given the fading memories and ease of recovering documents and the need to lock down ESI, it is very, very rare that I stay discovery in its entirety.

So I am of course interested in hearing the defendant's position both with regard to your anticipated defenses and what you would like to see in terms of where this case should go next. But keep in mind that we don't need to -- it's not all everything all at once necessarily, but I do tend to try to phase things in an appropriate fashion depending on the procedural posture.

So if you want to make arguments to me about why X discovery is premature, I'm open to it. I'm open to hearing all of your arguments of course. But I'm just previewing that I rarely stay discovery in its entirety.

So Ms. Haggans, would you like to start by providing me an overview of your anticipated defenses and where you see this going and what you think is appropriate?

MS. HAGGANS: Thank you, your Honor. Yes. So I think I will start with kind and the first question that you posed to plaintiff's counsel which is what does

the kind of landscape of cases related to these issues mean for this case that's pending before you?

So it's a little bit of a moving target. The landscape looks different as we sit here today than it did in May when plaintiffs filed this action. By my count -- and I'll start by saying I can't speak to cases against other industry participants, but cases just against my client, the Unison defendants, we are now at three federal class actions, two state class actions, and a handful, maybe half a dozen of individual actions in federal and state courts around the country. So I think Ms. Terrell's estimate of about ten cases was pretty close.

We are in active discussions with our client about how to efficiently litigate these cases. They all make similar claims. They all are going to have the same kind of threshold what's subject to arbitration versus what's not subject to arbitration issue. We anticipate that the discovery that's going to be sought across all of these cases is going to be largely duplicative. And so we are actively engaged in thinking about what is going to be the most efficient way to do this, whether that's informal coordination, formal consolidation of potential multi-district litigation petition for all of these.

We expect to have a decision on that issue next week. Certainly once we have decided how we think it makes sense to proceed, we are going to engage with plaintiffs here as well as the plaintiffs in the other actions and meet and confer to try and reach agreement. Ms. Terrell is exactly right that no proposal has been made to them yet and I think it's just because it's really a very live issue.

So what I can propose on that today is that I think we will have a decision from our perspective next week after which we can then meet and confer with plaintiffs. And I would suggest that we put in maybe a status report for your Honor next week. Hopefully we'll be able to reach an agreement on a proposal and if we can't, we can include both our proposal and plaintiff's response on that.

THE COURT: Okay. That's very interesting. Ms. Terrell, do you have any reaction so far?

MS. TERRELL: I think the only reaction I have is that in addition to this case being limited to these agreements that were entered into in New York, all of the claims at issue here are New York state law claims. And so while I understand why the defendant is considering some form of consolidation or coordination, you know, the truth of the matter is that these cases are all quite

unique because they allege the state laws that are at issue with regard to agreements that were entered into in those states. And can tell you that some of those state laws are quite different than others.

And so my only thought would be we're always open to proposals of how to coordinate discovery to make it more streamlined especially in those cases where we are involved and we may know some of the counsel in other cases. Of course we always have efficiency in mind that's good for us and our clients. But I'm not quite sure, but maybe I'm just not thinking this through correctly, how we could consolidate cases that are in federal, state, federal court, state court, and are alleging different state laws. That seems like a very -- it seems like an uphill battle there but I'm sure there might be some ways we can talk about coordinating some of the efforts with regard to discovery.

THE COURT: I think that without knowing some particulars, Ms. Haggans, it's hard to know feasibility and efficiency and what efficiencies will be gained depending on the, you know, for various proposals. The fact that these are all state law claims doesn't necessarily change, for example, one of Ms. Haggans's points as to the basic document production of like what are the baseline agreements, what are the baseline terms?

I can imagine there being policy documents, various things that would be discoverable in every case. Of course individual claim files, individual, you know, loan arrangement files would be unique to each case. But I can imagine there being some efficiencies gained but without knowing the specific -- the devil's in the details, right, always, Ms. Haggans, in our profession?

So I think part of the core proposal was to meet and confer after her client has made more decisions and that the parties could perhaps propose a path forward in a joint proposal next week.

Ms. Haggans, would you like to elaborate on that?

MS. HAGGANS: Of course, your Honor. And I do understand that at least the federal class actions are, you know, state law claims. The threshold arbitration question though is common across all of the actions. And so should we decide to try to explore, you know, a formal mechanism for coordinating these cases, I think that would kind of be the crux of the proposal that each of these actions are going to require a federal court to decide a federal question about whether or not the claims of homeowners whose agreements have arbitration clauses are properly in court at all, right? Or whether they belong in arbitration.

And so, you know, without getting over my skis and kind of, you know, drafting a proposal on the fly here, I think that would be the crux of the argument in favor of some sort of formal coordinated proposal is that we would have, you know, kind of one decision on the arbitration question and then, you know, kind of go from there in terms of coordinated discovery across the actions.

THE COURT: Ms. Terrell, anything you'd like to say in response?

MS. TERRELL: I think I just look forward to seeing the response in writing. I think that will help me a lot.

And you know, just to be clear, we of course don't agree that Mr. Coffin is subject to arbitration, right? There is a provision in the agreement that's at issue here. But of course we are not conceding that they are going to successfully compel him into arbitration.

THE COURT: Right. So to that end, one of the things that I wanted to discuss today was on my to do list, mental to do list, was a discussion about the discovery necessary, if any, to work through the motion to compel arbitration issues because at the end of the day, those can be very fact intensive inquiries.

So Ms. Terrell, are there specific documents or

discovery steps that you would want to take with regard to that issue specifically as to your client?

MS. TERRELL: I think the discovery that we put together was more general than that. So I'll say yes. I don't know if I'm going to be able to give you the full list of what we would like to see. But of course all documents and agreements involving our clients, including Mr. Coffin, we typically want to see the forms of arbitration agreements and how they have changed over time.

It's often important to know the process by which the agreement was entered into. And sometimes that can include online or digital signing. I don't know if that is relevant here.

And then there are times when we want to look into whether the defendant has actually availed itself of the arbitration clause in a uniform manner.

That's what I can give you off the top of my head. I would invite my co-counsel to jump in if they have any other specific documents or information that we know right now that we would want to take with regard to defending against the motion to compel arbitration.

MS. TARANTOLO: Nothing else comes to mind. Thank you, Beth.

MS. TERRELL: Oh good. Thank you.

THE COURT: Okay. Thank you, Ms. Tarantolo.

So Ms. Haggans, to that point, if the defendant does in fact to compel arbitration, do you have a sense of what you would be relying upon in terms of any documentary support or whether or not there's any issue with getting that discovery underway, you know, sort of as quickly as possible if that is going to be one of your opening moves.

MS. HAGGANS: Well, I think the support primarily for the motion to compel arbitration is the agreement itself, right, that Mr. Coffin signed and that I believe is already on file as an attachment to the amended complaint.

Certainly if there are other documents or information that Ms. Terrell and her team think that they need in order to assess our motion, we're certainly happy to consider those requests and meet and confer as to what, you know, would be appropriate. You know, off the top of my head some of the categories that she just ticked through seem like something we can do. Others seem like I would need to understand more about why, you know, they would think they would need them to defend the motion to compel arbitration.

THE COURT: Right. So you know, I do think that at a minimum, you know, if we are going to kind of

defer big picture decisions on exactly how many discovery deadlines we're setting and for what in this case until you have an opportunity to discuss with your client and meet and confer with plaintiffs next week, at a minimum I need you guys to meet and confer and discuss also this issue because motions to compel arbitration, of course the burden is on the movant. It's not on Mr. Coffin to say why he thinks it was procedurally or substantively unconscionable that he was entered into this agreement. I don't know the circumstances under which the contract was formed. But at the end of the day it's obviously the movant's burden.

And so what Ms. Terrell and her team are going to want, you guys would need to meet and confer about it, and if there's truly an intractable dispute about it, that can be raised after a meet and confer.

But the circumstances of the signing matter a great deal and that's part of why I question, for example, whether or not that's a threshold issue that can be dealt with on a classwide basis because everybody's circumstances are different. I don't know what people's technological literacy levels are, you know, in terms of whether things are substantively or procedurally unconscionable, depending on how things went, how documents were circulated. There's a lot of law out

there on these clickwrap and hybrid browse-wrap agreements. It's very complicated.

Was it all digitized your process, Ms. Haggans?

MS. HAGGANS: I believe it was, your Honor, but sitting here today I don't know the answer, so I wouldn't want to --

THE COURT: So yes, don't speculate. That's very dangerous in our line of work. So you know, just please do, you know, meet and confer and include in any joint proposal next week what the parties' agreements are with regard to any discovery that is being exchanged vis-à-vis the motion to compel arbitration because at a minimum plaintiff definitely is entitled to that if that motion is coming down the pike.

I've had it done multiple ways. You know, sometimes people file their motion to compel arbitration like right off the bat with an affidavit from whoever at the company as to why this is appropriate, and here's the documents. Other times we've had a short discovery window and then people have an opportunity to meet and confer.

So I'm not saying how you must do it. We are open to your ideas in terms of efficiency and getting to the root matters that everybody needs to get to so that everybody's papers can be properly prepared. Does that

make sense, Ms. Terrell?

MS. TERRELL: That makes a great deal of sense and we will commit to writing my rambling requests and make sure they're comprehensive and get them over to you as soon as we can, Ms. Haggans.

THE COURT: Okay.

MS. HAGGANS: Thank you, thank you.

THE COURT: So if the plan is to permit the parties an additional week or so to talk about case management writ large and discovery steps writ large, what else should we be trying to do today other than set a date for that report? But Ms. Terrell, what you think we should try to do today?

MS. TERRELL: Well, I do think that Ms. Whitbeck is in an entirely different situation. And so I tend to think that regardless of what happens with the potential arbitration discovery, it would be helpful to know from your Honor -- I mean we have discovery drafts that we provided to defense counsel addressing not only plaintiff's documents but also some classwide information that we would need in order to accomplish phase one discovery. Again, we thought that they were at least going to provide the plaintiff's information.

And so I feel like that's an independent issue that we could address regardless of the defendants' need

to decide what they're going to propose with regard to the other cases and regardless of what we're doing in terms of discussing arbitration-related discovery.

THE COURT: Fair enough. Okay. Ms. Haggans, you response?

MS. HAGGANS: Well, your Honor, I'm sure it won't be surprising to anyone that we think that the big picture question of what happens among all of these cases should be decided first before we talk about discovery specific to Ms. Whitbeck.

And you know, I think what we're asking here is really just kind of one more week to kind of land on our proposal. And so as a threshold we would request that space before we would commit to what we can do on Ms. Whitbeck.

We do think that the arbitration issues kind of require that the staying of the case writ large because it is the case that the vast majority of putative class members are going to be subject to an arbitration agreement and, you know, whatever the outcome is of that arbitration just given that, you know, dates when our client has been operating in New York. Most of the homeowners entered into their agreements after Unison started including arbitration in the agreements.

Further, it doesn't seem to make sense to us to

proceed full scale with discovery on Ms. Whitbeck's claims when the, you know, main discovery as to Mr. Coffin and anyone similarly situated to him with an arbitration agreement is paused because we'll then have to go back. It seems much more efficient to us to resolve the arbitration question. We'll know the answer to that one way or the other and then we proceed with plaintiff's class, you know, with some understanding of the scope of it.

With respect to specifically your Honor's phase one discovery that contemplates the discovery necessary to evaluate the possibility of an early settlement, we fully understand that that's how your Honor prefers to proceed and we are open to meeting and conferring with plaintiffs about, you know, what discovery as to Ms. Whitbeck they might need in order to be able to evaluate her case individually from that perspective. We don't think it's appropriate at this point to be responding to classwide discovery because the arbitration issue is going to be so fundamental to deciding, you know, who's in class and who's not.

THE COURT: I do see the interconnectionness of the arbitration issue and the class issue but it's also kind of, you know, suggesting that Ms. Whitbeck wait and sit on her rights while -- because others are litigating?

I'm not sure what your authority is for that, Ms. Haggans, unless it's just the general efficiency argument. But that's sufficiency for you.

MS. HAGGANS: Well, Ms. Whitbeck has elected to bring her claims as, you know, representative of the putative class that includes homeowners situated like herself that, you know, are not subject to arbitration and homeowners that are subject to arbitration agreements. You know, she chose the procedural mechanism of this case.

THE COURT: And she may or may not be an appropriate class representative for people who are subject to an arbitration agreement. That may be why they have two plaintiffs. You know? But why should she wait because others are litigating here and elsewhere?

MS. HAGGANS: Well, the efficiency of the case as a whole, I mean our understanding of *Coinbase* and the discussion in that case, you know, speaks of staying the proceeding as a whole, right? Which would mean the action before your Honor gets stayed pending resolution of the threshold question.

THE COURT: Arbitration for someone else?

MS. HAGGANS: Another member of the same putative class.

THE COURT: But there may not be a missing

class. You're putting the cart before the horse.

MS. HAGGANS: Well --

THE COURT: They could be in subclasses. I mean it's all unknown is my point. And I am concerned about essentially putting Ms. Whitbeck on hold indefinitely without good cause.

I also wonder candidly how big of a burden it is to even provide Ms. Whitbeck's file. I could imagine that digitized error in which we all are working and practicing, the Ms. Whitbeck file would not be that burdensome to produce, Ms. Haggans.

MS. HAGGANS: Oh, I'm sorry if I misspoke, your Honor. We hear you and we agree and we're certainly willing to work with plaintiffs to provide Ms. Whitbeck's file, any documents related to Ms. Whitbeck's transaction. Certainly that would be within the scope of your Honor's phase one, you know, settlement related discovery and we're certainly willing to meet and confer and discuss how to do that.

THE COURT: All right. Ms. Terrell, would you like to respond and give me some ideas about how you think we can proceed here efficiently?

MS. TERRELL: Yeah. Thank you, your Honor. Well, I'm pleased to hear that we'll at least get Ms. Whitbeck's final. I think that's a really good start and

I think that makes good sense.

In addition to that, and then I assume with regard to the arbitration-related discovery for Mr. Coffin, we'll get his file as well. Is that true, Ms. Haggans?

MS. HAGGANS: I believe -- I mean obviously the devil's in the details. It's subject to what plaintiffs are requesting as to Mr. Coffin. Certainly his transaction file, and assuming we're talking about the same thing, only safe transaction file, yes, we can provide that and we will certainly in good faith meet and confer with you on any additional sources of information that you think you need to assess arbitration.

MS. TERRELL: Just so there's no confusion on what we're going to ask for, we want all the documents that your client has about both of our plaintiffs, right? I mean that seems like that's information that we should have for both plaintiffs regardless of what other procedural issues are going to be hashed out. So we can meet and confer about that but that's something that I think we're going to request and feel relatively strongly about.

I guess with regard to other documents for Ms. Whitbeck's sort of stream of discovery, some of your arguments, or I should say some of Ms. Haggans's

arguments about the reason why discovery could be coordinated, the similarity in the forms of agreements, the manner of marketing, all of those things that I think we're going to hear from them in terms of why discovery could be coordinated or consolidated I think actually support going forward with fairly fulsome discovery for Ms. Whitbeck. I don't think it's going to be onerous but of course we'll meet and confer about it.

We sent a draft of the nature of the discovery that we were seeking in phase one. I don't believe that we got a response to it, so I think that's the beginning point of that meet and confer. And we really did try to look carefully at it to make it what we really needed, right, including data because in these cases we need data to understand the scope of the class that we would be resolving and any differences between and among class members to the extent that those exist. So maybe that's just the starting point. But we want agreements, we want marketing, we want the nature of the documents that Unison is using.

So it's all going to be, as I understand it, documents internal to Unison. And we tried to make it a fairly limited universe of information.

THE COURT: Okay. So I think we have a couple of points of agreement and I think we should memorialize

these things and also set a due date for the status report to provide further guidance if the parties are able to reach any further agreements with regard to more board based discovery or the defendants' just sort of determinations as to how to promote efficiency.

At a minimum, I think that disclosure of the files for the two named plaintiffs seems in order. It reminds me of my FCRA and FDCPA cases which are sometimes brought on behalf of, you know, larger groups. Like at a minimum the named plaintiff's file should be turned over.

Where you go next vis-à-vis the bigger picture issues on class discovery seems somewhat premature to me because we don't have a sense of who the classes will be, how the classes will be organized. And this motion to compel arbitration throws a monkey wrench into things.

So in addition to the files for the two named class members, I really think we need to set a realistic time frame for the disclosure of any documents the parties think are going to be relevant for the arbitration motion and a due date for this status report. And then hopefully the status report will have some clarity about what, if anything, the parties are able to agree upon vis-à-vis bigger picture fast forward in terms of document requests and disclosures for consolidations, things that are attainable.

But until and unless there is a formal consolidation or an actual motion to consolidate or to move the case or anything along those lines, this case is live before me with two named plaintiffs and a putative class and we do need to treat it accordingly, Ms. Haggans. So although I fully appreciate that it feels like you're -- I can feel, I can sense that your client is mired in litigation and you guys are trying very hard to figure out a reasonable path forward for you and them. We need to have some kind of plan in place for this case and we will be, and I think Ms. Terrell will be, make every effort to be reasonable and realistic in how it all works together. But we aren't just going to put this case on hold indefinitely for your client to figure things out.

So does that make sense to you, Ms. Haggans?

MS. HAGGANS: Yes, it does. Thank you, your Honor. I appreciate the push to make some decisions and again, you know, the goal here is not to indefinitely ponder. The goal is to land and come to both plaintiffs and the Court next week with a proposal.

THE COURT: Okay.

MS. HAGGANS: So thank you. We appreciate that flexibility.

THE COURT: What date can I put down for your

joint status report for next steps on discovery? I know it's the 21st now. Perhaps you want towards the end, the middle or end of the week given your schedules. I don't know. Ms. Haggans, what is your proposal? And then I'll check with Ms. Terrell.

MS. HAGGANS: Sure. Can I suggest -- and we're happy to do this however the Court prefers whether it's a single report or, you know, multiple reports. But Judge Vitaliano had asked us to meet and confer about potential briefing schedule for the motion to compel arbitration and motion to dismiss by the 31st which I believe is next Friday. So I would suggest that we kind of either to do one report or two as the Court prefers but have all of that kind of come in simultaneously next week.

THE COURT: On the 31st?

MS. HAGGANS: Yes.

THE COURT: Okay. Ms. Terrell, any objections to that date?

MS. TERRELL: No objection to that, your Honor.

THE COURT: Okay. So just in terms of the way division of business is done around here, I think it might be cleaner if you do a very short letter with your proposed schedule on the briefing and don't burden Judge Vitaliano with the lengthier discovery proposal because, you know, then we have to back end like who's doing what?

And that's, you know, it's just confusing.

So if you could submit your joint status report with your discovery related proposals in one filing and then your letter to Judge Vitaliano in another filing, I think that would be most efficient for both chambers. And I don't think that one paragraph with a briefing schedule is going to be overly burdensome to file two documents. Is that fair, Ms. Haggans?

MS. HAGGANS: Yes, that works for us.

THE COURT: Okay. And then can we also set a deadline for disclosure of the files, Unison's files relating to the named plaintiffs? Ms. Haggans?

MS. HAGGANS: Yes. Let me look at the calendar here. Can we do that maybe the following week, the first week of August? I don't anticipate that we will need that long. And if we have them ready sooner, we will certainly not sit on them, but I don't want to have to come back to the Court and ask for a little more time.

THE COURT: All right. So what date do you propose?

MS. HAGGANS: Can I propose August 7th?

THE COURT: Ms. Terrell, any objection?

MS. TERRELL: I think that's fine. Can I just add two things though if you'll indulge me?

One is I am a little worried and of course

we're going to meet and confer about this, but the definition of what the plaintiffs' files are I think is an issue. And just to be clear, in our draft discovery we asked for all documents concerning plaintiffs including emails, letters, text messages or recordings of calls. So it is more than just the transaction documents.

And so I just wanted to throw that out there and just see if that causes an issue for Ms. Haggans.

THE COURT: Ms. Haggans?

MS. HAGGANS: I don't think it does. I apologize, I'm not prepared to discuss today, you know, what is easily accessible and what exactly we can collect and provide within the short time frame. But I certainly will do that and can meet and confer with Ms. Terrell next week.

THE COURT: Okay.

MS. TERRELL: And then I have one other request --

THE COURT: Yes.

MS. TERRELL: -- which is we don't know the breakdown of how many class members have arbitration agreements and how many don't, or at least I don't and it's possible others do. That seems to be an item of information that would be very important for us to know

with regard to all of these conversations. And so if that's something that Ms. Haggans would provide, I think we would greatly appreciate that.

THE COURT: Okay. So Ms. Haggans, what's your response to that request?

MS. HAGGANS: I can certainly take that back. I understand the request and we will take that back. Thank you.

THE COURT: Okay. So the third item that I wanted to set a sort of time frame for, and I don't know that it results in any kind of due date to me, but perhaps a due date amongst the parties, is this meet and confer regarding discovery concerning the arbitration and that Ms. Terrell's last request was I think adjacent, directly adjacent to those issues.

So in addition to providing the documentation or evidence you anticipate using as support for the motion to compel arbitration, Ms. Terrell has of course now expressed interest, and I'm sure it's in previous filings and discussions with you as well, as to the data, how many New Yorkers are subject to the arbitration clauses with your client?

So I don't need to be involved in your meet and confer, but I do think it's useful, because we're all over burdened, to set due dates.

So how long of a period do you think you can set as a deadline for a meet and confer regarding discovery as to the arbitration issues and the documents in evidence that are going to be needed connected to any arbitration hearing.

And this could go beyond the files of the individuals. For example, if you have a technical expert who's going to talk about how the documents are emailed and how Docusign works and what checks are in place to make sure that things don't get signed by a nonparty or you verify the Docusign signatures. I have no idea what your process was. I'm making things up based on other cases.

But Ms. Haggans, how long of a period of time do you think is necessary for you to get your arms around those issues and to have a meet and confer with Ms. Terrell?

MS. HAGGANS: I think we'd have to see her arbitration-related requests before I can answer that question.

THE COURT: It's your burden. So I think of this as Rule 26 discovery on your motion.

MS. HAGGANS: I think our motion is going to be based on the agreement itself.

THE COURT: Okay. When she writes back and

says procedural unconscionability, you're not going to rebut that?

MS. HAGGANS: Well, I we're certainly going to rebut that.

THE COURT: With what?

MS. HAGGANS: I don't think --

THE COURT: That's what I'm getting at, with what? Like any and all evidence material to your claims or defenses are part of this, right? And so that's what I'm getting at. I think that yes, she's going to have some arbitration demands but you too have an affirmative burden to produce whatever it is that you're going to be relying upon in support of your motion at any stage of that motion because it's all going to get briefed and then the Court's going to have to make a determination as to whether there's going to be a hearing.

MS. HAGGANS: I understand the question, your Honor. I'm not prepared to put a timeline on that today.

THE COURT: Okay. So Ms. Terrell, any thoughts on what to do with regard to that issue?

MS. TERRELL: Well, I like deadlines for all kinds of reasons.

THE COURT: I love deadlines. We all need them because we're all too busy.

MS. TERRELL: You know, I guess -- I mean maybe

what makes the most sense is that we formally serve our discovery requests relating to arbitration, you know, the issues as we understand they might present in their motion. That can be the starting point. But I do think that we're entitled to, you know, disclosure now of whatever they're going to rely on in their motion. I think both things need to be happening simultaneously. But we're happy to kick it off with sending a formal set of discovery and then the deadline will be 30 days from that date.

THE COURT: Okay. So what I'll do is I will open discovery for the purposes of the parties exchanging demands with regards to the arbitration-related issues. In addition, we'll have the exchange of the files related to the plaintiffs and hopefully you guys can reach some accommodations through the meet and confer next week as to bigger picture issues and case management issues writ large all TBD. But I will open quote/unquote discovery for purposes of evaluating what each side needs vis-à-vis the motion to compel arbitration.

And my comments to Ms. Haggans applied to you too, Ms. Terrell, of course. If you're planning to offer evidence in support of your arbitration response or if there were to ever be an arbitration hearing, a motion to compel hearing, all of that will need to get disclosed

and we'll have to figure it out as the motions get briefed.

Okay. I know it seems like we didn't accomplish -- maybe we did accomplish a fair amount. It feels like we did and didn't. You know? I like to set a huge schedule but, you know, we aren't going to do that.

So Ms. Haggans, is there anything else realistically that you think we should try to do today?

MS. HAGGANS: No, your Honor. I think I understand my marching orders and certainly will be touch with Ms. Terrell and her team next week.

THE COURT: Okay. Ms. Terrell, what do you think we should do? Anything else for today?

MS. TERRELL: No, I think this is great. Thank you. This gives us really good guidance for going forward. Thank you so much, your Honor.

THE COURT: Okay. All right. So what we'll do from here is after we get your status report next week, hopefully there's some agreed upon stuff. If there is, we'll order it. If there's not, we'll have to bring you all back in and figure out what makes sense in terms of additional steps in the process.

You know, at some point depending on what the parties decide, we will have to decide the scope of this sort of opening period of discovery. And if we can't --

if you guys can't agree on that scope, you know, we'll have to do that. So we'll either have another conference -- I try as much as I can to have discovery conferences in lieu of back-and-forth between because I find it to be much more efficient. So you know, if we need to, we'll just bring you right back and figure it out. Okay.

MS. HAGGANS: Thank you.

THE COURT: One quick housekeeping note. You know, unlike a traditional initial conference, I'll put a few deadlines and notes on the docket as to what happened here today. I'm not going to set a full formal Rule 16 schedule yet. But we will of course need to do that eventually and we'll want to see what your proposals are.

Quick housekeeping note with regard to discovery disputes. As I noted, I do prefer to try to resolve them and have conferences and sort of mediation-style resolution of discovery issues as they come up rather than, you know, doing a back and forth motion to compel or motion to quash style because it's so slow and so unproductive.

So if you do have discovery issues, please review my individual rules. I have a very tiny individual rule on motions relating to discovery. In a nutshell, they're not allowed until the parties have met

and conferred in a good faith effort to resolve the precise dispute at issue. And from there, we will ask you to prepare a joint filing that briefly outlines each side's position with respect to the dispute. Oftentimes a lot of the issues are resolved when both parties put their positions in writing and you see each other's positions. And so that can sometimes cut out a big swath of issues. As soon as it's reduced to writing for the joint report, people are like oh, actually we can agree on these seven things, we only need to raise these three.

So that's my request, joint proposal and each side's position laid out and we'll get you back on the phone or in Zoom or in the courtroom if we need to look at documents together and things like that and try to resolve disputes as they arise.

With that, anything final final, Ms. Terrell?

MS. TERRELL: No, your Honor. Thank you.

THE COURT: Ms. Haggans?

MS. HAGGANS: No, nothing more. Thank you, your Honor.

THE COURT: All right. Thank you all. Have a great rest of the day. I look forward to getting your status report next Friday. Take care, everybody.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **25th** day of **July**, 2026.

Mary Greco

Transcriptions Plus II, Inc.