# Exhibit
# - 2 -

eFiled
5/6/2026 6:44:48 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNISON AGREEMENT CORP., *et al.*<br><br>Defendants. | **Case No.:** 2026-CAB-000955<br><br>**Judge:** Robert D. Okun<br><br>**Calendar:** 6<br><br>**Next Hearing:** August 28, 2026, at 9:30 AM<br><br>**Event:** Initial Hearing |

**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* and D.C. Code § 16-4401 *et seq.*, Defendants Unison Agreement Corporation, Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc. ("Defendants" or "Unison"), respectfully move to compel arbitration. In addition, pursuant to D.C. Code, § 16-4407(e) & (f), Defendants seek a mandatory stay of the entirety of this action pending a ruling on the instant Motion, and, if the Motion is granted, to extend the mandatory stay pending the conclusion of arbitration proceedings.

As explained further in Defendants' Memorandum of Points and Authorities, the Court should compel arbitration because Plaintiff National Association of Consumer Advocates, Inc.'s ("Plaintiff" or "NACA") entire CPPA claim is intertwined with contracts containing broad arbitration provisions. Even though Plaintiff is a non-party to those contracts, Plaintiff is nevertheless bound to arbitrate under bedrock estoppel principles. Pending resolution of this Motion, this Court should issue a mandatory stay on this entire action pursuant to D.C. Code, § 16-4407(e), which requires a mandatory stay on all proceedings—including Defendants' May 18, 2026, deadline to respond to the Complaint—while a motion to compel arbitration remains

pending before the Court. And if the Court compels arbitration, then that mandatory stay should be extended pursuant to D.C. Code, § 16-4407(f), which similarly imposes a mandatory stay on the entire action while arbitration proceedings are ongoing.

Pursuant to Local Civil Rule 12-I(a), counsel for Defendants met and conferred with counsel for Plaintiffs on May 5, 2026. Plaintiff opposes this Motion. Pursuant to Local Civil Rule 12-I(h), Defendants respectfully request an oral hearing on this Motion at a time and place to be set by the Court.

Dated: May 6, 2026

Respectfully submitted,

*/s/ Raymond P. Tolentino*

Michelle L. Rogers (D.C. Bar #498625)
Raymond P. Tolentino (D.C. Bar #1028781)
Matt K. Nguyen (D.C. Bar #1736777)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Phone: 202-842-7800
Fax: 202-842-7899
Email: mrogers@cooley.com
Email: rtolentino@cooley.com
Email: mnguyen@cooley.com

*Counsel for Defendants Unison Agreement Corp., Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc.*

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, INC.<br><br>Plaintiff,<br>v.<br><br>UNISON AGREEMENT CORP., *et al.*<br><br>Defendants. | **Case No.:** 2026-CAB-000955<br><br>**Judge:** Robert D. Okun<br><br>**Calendar:** 6<br><br>**Next Hearing:** August 28, 2026, at 9:30 AM<br><br>**Event:** Initial Hearing |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL AND PROCEDURAL BACKGROUND........ 2

A. Unison's Equity Sharing Agreements Empower D.C. Homeowners. ........ 2

B. Plaintiff's CPPA Claim Challenges Unison's ESAs in their Entirety. ........ 3

C. Under the Three-Year Statute of Limitations for CPPA Claims, Plaintiff's Complaint Challenges Only Two ESAs Signed on or after February 2023. ........ 3

D. The ESAs' Broad Arbitration Provisions Confirm the D.C. Homeowners' Interest in Arbitrating All Claims, Including Plaintiff's CPPA Claim. ........ 4

LEGAL STANDARDS ........ 5

ARGUMENT ........ 7

I. Plaintiff Must Arbitrate its CPPA Claim against Unison. ........ 7

A. *Even though Plaintiff is a nonparty to the ESAs, it is bound to arbitrate under bedrock estoppel principles.* ........ 7

B. *Plaintiff's CPPA claim and any questions about arbitrability plainly fall within the scope of the Arbitration Agreement.* ........ 14

II. This Action Must Be Stayed Pending this Court's Ruling on this Motion. ........ 18

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re A2P SMS Antitrust Litig.*,
972 F. Supp. 2d 465 (S.D.N.Y. 2013)........10

*Animal Legal Def. Fund v. Hormel Foods Corp.*,
258 A.3d 174 (D.C. 2021)........10

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)........6, 7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)........13

*Bank of Am., N.A. v. District of Columbia*,
80 A.3d 650 (D.C. 2013)........15

*In re Calomiris*,
894 A.2d 408 (D.C. 2006)........6, 7

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)........13, 17

*Friend v. Friend*,
609 A.2d 1137 (D.C. 1992)........1

*Grayson v. AT&T Corp.*,
15 A.3d 219 (D.C. 2011)........13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)........15

*Hercules & Co. v. Shama Rest. Corp.*,
613 A.2d 916 (D.C. 1992)........7, 15

*Keeton v. Wells Fargo Corp.*,
987 A.2d 1118 (D.C. 2010)........11

*In re L.C.*,
348 A.3d 37 (D.C. 2025)........13

*Lewis v. Hotel & Rest. Emps. Union, Loc. 25, AFL-CIO*,
727 A.2d 297 (D.C. 1999)........13

*Mars, Inc. v. Szarzynski*,
2021 WL 2809539 (D.D.C. July 6, 2021)........8, 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........................................ 1

*Murray v. Wells Fargo Home Mortg.*,
953 A.2d 308 (D.C. 2008) ........................................ 4

*NACA, Inc. v. Gemini Trust Co. LLC*,
No. 2024-CAB-003999 (D.C. Super. Ct. Aug. 7, 2025) ........................................ 12, 13, 14

*Parker v. K&L Gates, LLP*,
76 A.3d 859 (D.C. 2013) ........................................ 6

*Pisciotta v. Shearson Lehman Bros.*,
629 A.2d 520 (D.C. 1993) ........................................ 1

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........................................ 15

*Riley v. BMO Harris Bank, N.A.*,
61 F. Supp. 3d 92 (D.D.C. 2014) ........................................ 6, 7, 8

*Roberts v. Advanced Bldg. Design, Inc.*,
339 A.3d 758 (D.C. 2025) ........................................ 11

*Sakyi v. Estée Lauder Cos.*,
308 F. Supp. 3d 366 (D.D.C. 2018) ........................................ 7, 11, 14

*Tovar v. Regan Zambri Long, PLLC*,
321 A.3d 600 (D.C. 2024) ........................................ 4

*Travelers United, Inc. v. Hilton Worldwide Holdings, Inc.*,
No. 2023-CAB-005813 (D.C. Super. Ct. Jan. 13, 2025) ........................................ 10, 12

*TRG Customer Sols., Inc. v. Smith*,
226 A.3d 751 (D.C. 2020) ........................................ 5

*Univ. of the D.C. Fac. Ass'n / Nat'l Educ. Ass'n v. Bd. of Trs. of Univ. of the D.C.*,
257 A.3d 1026 (D.C. 2021) ........................................ 6

*Woodland Ltd. P'ship v. Wulff*,
868 A.2d 860 (D.C. 2005) ........................................ 15-16

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### Statutes

9 U.S.C.
§ 2 .....7
§ 4 .....5

15 U.S.C.
§ 1602(dd)(5) .....16
§ 1602(f) .....16
§ 1639c(e)(1) .....16

D.C. Code
§ 12-301(a)(8) .....1, 4
§ 16-4406(a) .....5
§ 16-4406(b) .....5
§ 16-4406(c) .....6
§ 16-4407(a)(2) .....5
§ 16-4407(e) .....18, 19
§ 16-4407(f) .....6, 18
§ 28- 3905(k)(1)(D) .....10
§ 28-3905(k)(1)(D)(i) .....3, 10, 11, 13
§ 28-3905(k)(1)(D)(ii) .....10

### Other Authorities

12 C.F.R.
Pt. 1026, Supp. I, Part 1, cmt. 2(a)(14)(1)(vii) .....17
§ 1026.36(h)(1) .....16

21 R. Lord, Williston on Contracts § 57:19 .....6, 7, 8

# INTRODUCTION

Federal and D.C. law reflects a strong and well-established policy favoring voluntary arbitration. *Pisciotta v. Shearson Lehman Bros.*, 629 A.2d 520, 522 (D.C. 1993) (emphasizing D.C. law's "fundamental and powerful policy embodied in modern arbitration statutes that favors voluntary commercial arbitration and narrowly constricts the scope of judicial intervention in such proceedings" (cleaned up)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (underscoring the Federal Arbitration Act's "congressional declaration of a liberal federal policy favoring arbitration agreements"). Thus, the D.C. Court of Appeals has made clear that, "when the [contracting] parties have expressed a willingness to arbitrate," courts must honor their "well-established preference for arbitration." *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992). Questions concerning the scope of arbitrable issues are thus resolved in favor of arbitration. This federal and D.C. policy favoring voluntary arbitration exists for good reason: Arbitration provides parties with an efficient, streamlined, and mutually agreed-upon forum for resolving disputes—a bargained-for contractual right that D.C. courts are obligated to protect.

Here, Plaintiff National Association of Consumer Advocates, Inc. ("Plaintiff") brings suit as a third-party advocacy group under the D.C. Consumer Protection Procedures Act ("CPPA"), raising no direct claims of its own. Instead, Plaintiff asserts a single CPPA claim to enjoin all of Unison's Equity Sharing Agreements ("ESAs") with D.C. homeowners, purportedly standing in their shoes. But the only two ESAs that D.C. homeowners have signed with Unison since February 11, 2023—the start of the Complaint's three-year statute of limitations period, D.C. Code § 12–301(a)(8)—contain ***an express agreement to arbitrate all disputes arising from their ESAs***.

Even though Plaintiff is not a party to these ESAs, Plaintiff has tethered its CPPA claim to these ESAs in their entirety, inclusive of their arbitration agreements. Simply put, Plaintiff's claim is intertwined with these ESAs. And crucially, Plaintiff's ability to bring suit in the first place

hinges exclusively on Plaintiff representing the "interests" of these two homeowners—who have expressed their interest in arbitrating all claims, including under the CPPA, involving their ESAs. Yet, by filing this Complaint here instead of an arbitral tribunal, Plaintiff asks this Court to not only upend the deep-rooted federal and D.C. policy favoring voluntary arbitration, but also to disregard the deliberate choice these two homeowners already made to arbitrate with Unison.

Under bedrock principles of equitable estoppel, Plaintiff is bound to arbitrate. Accordingly, this Court should compel arbitration and stay this action pending resolution of arbitration. In the interim, D.C. law imposes a mandatory stay on this action pending a ruling on this Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Unison's Equity Sharing Agreements Empower D.C. Homeowners.

Unison was founded on a simple premise: homeownership should be more accessible for all. Through ESAs, Unison offers D.C. homeowners a unique source of financial access and flexibility—offering upfront capital with no monthly payments, no interest accrual, and virtually no likelihood of foreclosure in return for Unison receiving the option to buy a partial share in their property in the future for an additional set price. *See* Declaration of Theodor Haugen ("Haugen Decl.") ¶¶ 4-7 & Ex. 2 at § 3, 3.1.1-3.1.2, attached thereto. These homeowners then take this capital infusion from Unison to satisfy the down payment for their mortgage, which is approved and provided by an entirely separate company, or to pay for other expenses. *See id.* at § 2.1.

Unison has no obligation to purchase a share of their property; it simply has the option to do so. *See id.* at § 3. If Unison later chooses to pay the homeowner even more money to exercise its option, Unison then buys a partial share in the property and shares with the D.C. homeowner any future appreciation and depreciation of the property—with no guarantee of returns for Unison. *Id.* § 3.1.1-3.1.2. And in stark contrast to credit and debt transactions, ESAs do not obligate D.C. homeowners to repay any sum certain to Unison; any potential exercise of Unison's option is

contingent on sale, refinancing, conclusion of the term, or other termination events generally within the homeowner's control. *Id.* §§ 6.1 & 12.1.

### B. Plaintiff's CPPA Claim Challenges Unison's ESAs in their Entirety.

On February 11, 2026, Plaintiff filed this action in D.C. Superior Court, alleging a single cause of action under the CPPA. Compl. ¶¶ 18, 168-96. Plaintiff purports to have standing as a "public interest organization" under D.C. Code § 28-3905(k)(1)(D)(i), and to bring this Complaint "on behalf of the interests of District consumers who entered into Unison HomeBuyer and HomeOwner Agreement," also known as ESAs. Compl. ¶¶ 173-75.

Plaintiff's Complaint seeks to void all such ESAs on the grounds that they constitute "unfair or deceptive trade practices affecting consumers within the District." *Id.* ¶ 176. Even though no D.C. law classifies ESAs as mortgages, Plaintiff asserts that ESAs are mortgage loans as a matter of law, and that Unison allegedly operates as an unlicensed mortgage lender in violation of several federal and D.C. laws. *Id.* ¶¶ 60-89. Plaintiff further asserts that Unison fraudulently misrepresents that it is a partner with D.C. homeowners in the ESAs, *id.* ¶ 149; that it shares in losses with them through the ESAs, *id.* ¶ 152; that the ESAs deprive homeowners of control over their properties, *id.* ¶ 153-54; that the ESAs' terms are so confusing that D.C. homeowners "cannot understand the total costs due under the agreement," claiming that the ESAs contain "cross references and approximately a dozen different formulas for calculating repayment," *id.* at 27(ii) (cleaned up); and that Unison knew its ESAs were illegal when contracting with D.C. homeowners. In short, Plaintiff's CPPA claim challenges Unison's ESAs in their entirety.

### C. Under the Three-Year Statute of Limitations for CPPA Claims, Plaintiff's Complaint Challenges Only Two ESAs Signed on or after February 2023.

Plaintiff's Complaint dated February 11, 2026, does not allege equitable tolling. So, given the CPPA's three-year statute of limitations, Plaintiff's CPPA claim applies only to ESAs entered

into on or after February 11, 2023. *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) ("[T]hree-year residual statute of limitations applies to claims brought under the Consumer Protections Procedure Act."); D.C. Code § 12-301(a)(8). Since February 11, 2023, only two D.C. homeowners have entered into ESAs with Unison. *See* Haugen Decl. ¶ 5.

### D. The ESAs' Broad Arbitration Provisions Confirm the D.C. Homeowners' Interest in Arbitrating All Claims, Including Plaintiff's CPPA Claim.

The two D.C. homeowners who fall within the limitations period signed ESAs that included broad arbitration agreements (the "Arbitration Agreement") governed by the FAA.[1] *See* Haugen Decl. ¶ 6, Ex. 1 at § 20.6, attached thereto ("This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by and enforceable under the . . . FAA[]. The arbitrator will apply substantive law consistent with the FAA and the applicable statute of limitations."). Under the Arbitration Agreement, any party to the ESA "may, at its sole election, choose to submit to neutral, binding arbitration . . . rather than court action," any of the following "controversies":

> [A]ny past, present, or future claim, dispute, or controversy (including matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise) whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise, between you and Investor or Investor's employees, directors, agents, successors or assigns, which arises out of or relates to the Unison HomeOwner Agreement,[2]

---

[1] Plaintiff expressly incorporates the ESAs by reference throughout its Complaint by quoting and relying upon specific ESA provisions to support its sole CPPA cause of action. *See, e.g.*, Compl. ¶¶ 72, 109, 121-24, 149. Plaintiff also attaches certain ESAs as exhibits to its Complaint. *See* Compl. ¶ 49 & n.19. While Plaintiff attached outdated 2017 and 2018 versions of the ESAs, its Complaint expressly seeks to void *all* ESAs. *See* Compl. ¶ 198. As such, the Complaint necessarily incorporates all ESAs by reference, particularly the two ESAs that fall within the CPPA's three-year statute of limitations, and this Court may consider them in resolving this Motion. *Cf. Tovar v. Regan Zambri Long, PLLC*, 321 A.3d 600, 609 (D.C. 2024) (at the pleading stage, the "court may . . . consider documents that are incorporated in the plaintiff's complaint").

[2] The ESAs titled HomeBuyer Agreements replace "HomeOwner Agreement" with "HomeBuyer Agreement." For purposes of this motion, both terms will be used interchangeably or jointly referred to as the "ESAs."

> including any dispute regarding an Appraised Value of the Property, Remodeling Adjustment or Deferred Maintenance Adjustment, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)[.]

*Id.* § 20.1. These two D.C. homeowners further agreed that the Arbitration Agreement's "scope . . . is to be given the broadest possible interpretation that is enforceable." *Id.* § 20.3. The Arbitration Agreement also includes an express delegation clause, which confirms that the "interpretation and scope" of the agreement and the "arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action." *Id.* Thus, the two D.C. homeowners whom Plaintiff purports to represent unambiguously conveyed their interest in arbitrating all disputes involving their ESAs (including threshold issues of arbitrability). *Id.* § 20.4.

By and through this Motion, Unison elects to exercise its contractual right to arbitrate this dispute, which Plaintiff purportedly filed in the interests of (two) D.C. homeowners to challenge the "interpretation and scope" of their ESAs with Unison. *See* D.C. Code § 16-4407(a)(2) (courts must "order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate"); 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

## LEGAL STANDARDS

The D.C. Court of Appeals has "a strong preference favoring arbitration when a contract contains an arbitration clause." *TRG Customer Sols., Inc. v. Smith*, 226 A.3d 751, 755 (D.C. 2020). Any arbitration agreement is presumed "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." D.C. Code § 16-4406(a). In the first instance, this Court "shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." *Id.* at § 16-4406(b). "If the court orders arbitration, the court,

on just terms, shall stay any judicial proceeding that involves a claim subject to the arbitration." D.C. Code § 16-4407(f). Thereafter, the "[a]rbitrator shall decide . . . whether a contract containing a valid agreement to arbitrate is enforceable." D.C. Code § 16-4406(c).

To grant a motion to compel arbitration, this Court must make two findings:

***First***, the Court must find either that (a) "the parties have an enforceable agreement to arbitrate," *Univ. of the D.C. Fac. Ass'n / Nat'l Educ. Ass'n v. Bd. of Trs. of Univ. of the D.C.*, 257 A.3d 1026, 1031 (D.C. 2021); or (b) arbitration is warranted because parties to a contract agreed to arbitrate and that agreement also applies to nonparties under "'traditional principles' of state law . . . [including] 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). As the D.C. Court of Appeals has made clear: "Arbitration rests on an exchange of promises. Parties to a contract may decide to exchange promises to substitute an arbitral for a judicial forum. Their agreement to do so may end up binding (or benefitting) ***nonsignatories***." *In re Calomiris*, 894 A.2d 408, 410 (D.C. 2006) (cleaned up & emphasis added). Along the same lines, under the FAA, courts apply estoppel principles to compel arbitration whenever a non-signatory brings claims that are "intertwined" with the underlying contract containing an arbitration agreement. *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 99 (D.D.C. 2014).

***Second***, the Court must find that the underlying dispute falls within the scope of the contract's arbitration agreement. *Bd. of Trs. of Univ. of the D.C.*, 257 A.3d at 1031. "To determine whether a particular claim is covered by an arbitration clause, we inquire merely whether the arbitration clause is susceptible of an interpretation that covers the dispute." *Parker v. K&L Gates, LLP*, 76 A.3d 859, 867 (D.C. 2013) (cleaned up). "[W]here there is ambiguity as to whether a

matter is within the scope of an arbitrator's authority, any doubts are to be resolved in favor of arbitration." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 922 (D.C. 1992).

## ARGUMENT

### I. Plaintiff Must Arbitrate its CPPA Claim against Unison.

The two ESAs signed by D.C. homeowners and Unison since February 11, 2023, clearly specify that "any . . . claim, dispute, or controversy . . . whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise, . . . which arises out of or relates to the [ESAs]" is subject to "neutral, binding arbitration . . . rather than court action." Haugen Decl. ¶ 6, Ex. 1 at § 20.1. It is therefore indisputable that these two D.C. homeowners expressed their interest in arbitrating every potential "claim" they may have—including under the CPPA—involving their ESAs. *See* 9 U.S.C. § 2 ("A written [arbitration] provision . . . shall be valid, irrevocable, and enforceable . . . ."). Since Plaintiff brings its sole CPPA claim purportedly "on behalf of" these two D.C. homeowners based on their ESAs, Compl. ¶ 175, under bedrock principles of equitable estoppel, Plaintiff is bound to arbitrate too—regardless of whether it is a signatory to these ESAs or not.

#### A. *Even though Plaintiff is a nonparty to the ESAs, it is bound to arbitrate under bedrock estoppel principles.*

When a nonparty to a contract challenges a contract signed between two parties containing an arbitration agreement, the nonparty may nevertheless be compelled to arbitrate under traditional principles of state law, including equitable estoppel. *Arthur Andersen*, 556 U.S. at 631 (citing Williston on Contracts § 57:19, p. 183); *In re Calomiris*, 894 A.2d at 410. Under the FAA, estoppel obligates a nonparty to arbitrate any claims that are "intertwined" with the contract containing the arbitration agreement. *Riley*, 61 F. Supp. 3d at 99; *Sakyi v. Estée Lauder Cos.*, 308 F. Supp. 3d 366, 385 (D.D.C. 2018) (estoppel asks "whether the issues to be litigated by the non-signatory and

signatory are sufficiently intertwined with the issues subject to arbitration" (cleaned up)); Williston on Contracts § 57:19 ("While a nonsignatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a nonsignatory, courts often consider both scenarios under a similar legal framework."). Plaintiff's CPPA claim is "intertwined" with the ESAs for several interrelated reasons.

***First***, Plaintiff's entire claim turns on the existence and operation of the ESAs. Plaintiff's Complaint "asserts [CPPA] claims that must be determined by reference to [the ESAs]." *Mars, Inc. v. Szarzynski*, 2021 WL 2809539, at *8 (D.D.C. July 6, 2021) (cleaned up). Plaintiff alleges that Unison fraudulently misrepresented that it had a "partnership" with consumers, as the ESAs stated that Unison "shall not be deemed a partner . . . or fiduciary with, or of, Owner." Compl. ¶ 149. Plaintiff asserts that Unison fraudulently misrepresented that it shares with D.C. homeowners in the property's appreciation and depreciation based on Plaintiff's misleading reading of ESA provisions regarding option exercise events. *Id.* ¶ 152 ("Further, the representation that Unison will share in any depreciation is misleading because in certain circumstances, Unison expressly disclaims a share of any depreciation. For example, if the homeowner exits the Agreement during the first three to five years . . . Unison does not share in any losses."). Plaintiff also alleges that Unison misrepresented that D.C. homeowners "maintain[] control of the property and receiv[e] the benefits of home ownership," due to allegedly "significant restrictions placed on [] home[s]." *Id.* ¶¶ 153-54. All of these allegations "rely on the specific terms of the underlying [] agreements," including the alleged "illegality of the terms" and Unison's alleged "knowledge of [the illegality]" when signing the ESAs with these D.C. homeowners. *Riley*, 61 F. Supp. 3d at 100. As such, Plaintiff's Complaint purports to "resolve issues that are intertwined with an agreement that the signatory has signed." *Id.* at 100-01.

Indeed, Plaintiff premises its Complaint entirely on Unison's ESAs—including its terms, structure, formulas, disclosures, and performance—such that there would be no claim here but for the underlying ESAs that contain the Arbitration Agreement. When a non-signatory brings claims that challenge the validity of contracts with arbitration provisions, courts readily compel arbitration because "there would be no claim . . . if the underlying contract never existed." *Id.* at 99.

Plaintiff's CPPA claim "must be determined by reference to [the] contract" signed by these D.C. homeowners and Unison. *Szarzynski*, 2021 WL 2809539, at *8. For example, one of Plaintiff's central allegations is that the ESAs' terms are "designed to prevent the consumer from understanding the full scope of the agreement." Compl. ¶ 11. Plaintiff repeatedly references provisions in the ESAs, including the ESA's "cross references and approximately a dozen different formulas for calculating repayment." *Id.*; *id.* ¶ 126 ("Unison's practice of making the total amount due under the Agreement difficult, if not impossible to ascertain is unfair, deceptive, and misleading. . . . These practices violate the CPPA."). Similarly, Plaintiff's other ESA-based allegations—including that Unison placed restrictions on homeowners via the ESAs, was not truly a "partner" with the homeowner due to language in the ESAs, and manipulated home values to maximize its return via the ESAs—are all based on and determined by referencing the ESAs. Compl. ¶¶ 129, 149, 154. At bottom, Plaintiff alleges that the ESAs as a whole constitute the allegedly unfair trade practice that subject Unison to CPPA liability. In other words, if these ESAs "never existed," Plaintiff has "no claim" against Unison. Accordingly, Plaintiff "may be compelled to arbitrate under the doctrine of equitable estoppel." *Szarzynski*, 2021 WL 2809539, at *8.

***Second***, Plaintiff's standing to bring its CPPA claim against Unison is similarly "intertwined" with—and derivative of—the D.C. homeowners that signed these ESAs with Unison. Plaintiff alleges no direct standing or particularized injury in its own right; rather, its cause

of action under the CPPA arises ***solely*** from the two ESAs at issue. *See Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 181 (D.C. 2021) (characterizing public interest organization standing under CPPA as "representational standing"). While the CPPA allows certain third-parties to sue "on behalf of the interests of a consumer," the third-party may only bring CPPA claims to the extent "the consumer . . . could bring an action" in their own right and only if the third-party respects their expressed interests. D.C. Code § 28-3905(k)(1)(D)(i); *accord* Order at 9, *Travelers United, Inc. v. Hilton Worldwide Holdings, Inc.*, No. 2023-CAB-005813 (D.C. Super. Ct. Jan. 13, 2025), *appeal pending*, No. 25-CV-0079 (docketed Jan. 23, 2025). ("[I]f the consumers Plaintiff intends to represent are precluded from suing in their own right, Plaintiff also is unable to proceed with the instant action under D.C. Code § 28- 3905(k)(1)(D)."). Plaintiff's own Complaint avers that it is bringing its CPPA claim "on behalf of the interests of District consumers ***who entered into Unison [ESAs]***." *Id.* ¶ 175 (emphasis added).

Plaintiff claims to represent the "interests" of this group of signatories whose CPPA claims arise out of and relate solely to the ESAs, demonstrating how its claim is dependent on the ESAs. Critically, the CPPA provides that any action brought by a third-party "shall be dismissed if the court determines that the [third-party] does not have sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii). In other words, Plaintiff asserts standing under the CPPA due to its purported nexus to the D.C. homeowners who affirmatively expressed their "interests" in arbitrating all disputes with Unison. That same purported nexus weighs decisively in favor of arbitration here. *Cf. In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (evaluating, for purposes of estoppel and arbitration, if "there is a 'close relationship' between the signatory and the non-signatory party." (cleaned up)). Simply put, to the extent Plaintiff seeks to stand in the shoes and represent

the "interests" of D.C. homeowners who entered into ESAs with Unison (a prerequisite to bringing its CPPA claim in the first instance), it is equally bound by their expressed desire to arbitrate.[3]

There is no question that, if the two D.C. consumers themselves brought any CPPA claims challenging their ESAs, then these claims would be subject to arbitration. *See Keeton v. Wells Fargo Corp.*, 987 A.2d 1118, 1123 (D.C. 2010) ("Should the court still find the arbitration clause valid after considering a fully developed record, it should . . . stay the [CPPA claim] proceedings pending the outcome of the arbitration."); *Roberts v. Advanced Bldg. Design, Inc.,* 339 A.3d 758, 761-63 (D.C. 2025) (rejecting Plaintiff's argument that the "CPPA precludes parties from privately agreeing to have CPPA claims litigated in any other forum" as "nothing in the CPPA expressly and unambiguously divests parties of their right to select a forum of their choosing"); *Sakyi*, 308 F. Supp. 3d at 371, 373 (granting motion to compel arbitration in a case that included CPPA claims). The Arbitration Agreement that these two D.C. homeowners signed states that "***any*** past, present, or future claim, dispute, or controversy . . . whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise . . . which ***arises out of or relates*** to the Unison HomeOwner Agreement" is subject to arbitration. Haugen Decl. ¶ 6, Ex. 1 at § 20.1 (emphasis added). This provision encompasses the claims of a D.C. homeowner who argues—like Plaintiff—that Unison "committed unfair or deceptive trade practices" and "[v]iolations of other laws" in how it marketed, offered, and structured the terms of the ESAs, as these allegations directly arise out of and relate to the ESAs. Compl. ¶¶ 168-96. To find that

[3] To the extent Plaintiff argues it is not bound to arbitrate by the ESAs, then Plaintiff's Complaint must be dismissed because it lacks the "sufficient nexus" to the D.C. homeowners whose "interests" it purports to represent in this case. D.C. Code § 28-3905(k)(1)(D)(i). By signing the ESAs with the Arbitration Agreements, those D.C. homeowners have already made clear that they would arbitrate all claims involving their ESAs, including under the CPPA. Defendants reserve the right to brief this issue in a future motion to dismiss if necessary.

Plaintiff is not bound by the Arbitration Agreement would be to allow a party to "avoid a valid [arbitration] clause simply by having a representative nonparty file the action." *Travelers United*, No. 2023-CAB-005813, at 9 (citation omitted); *cf. id.* ("[T]he fact that the [third-party plaintiff] itself was not a signatory to the documents setting forth an agreed-to forum does not render the forum selection clauses unenforceable against the Plaintiff.").

***Third***, the relief that Plaintiff seeks directly conflicts with, and undermines, contractual rights negotiated and agreed to by the D.C. homeowners and Unison, which further demonstrates how Plaintiff's Complaint is "intertwined" with the continued operation of the ESAs. Plaintiff demands, among other things, that this Court void every ESA in the District. Compl. ¶ 198(e); *see also id.* ¶ 198(a), (c). Plaintiff seeks to nullify agreements that D.C. homeowners have affirmatively contracted for (and have already received sizable upfront payments from Unison). Yet Plaintiff's Complaint contains no plausible allegations or evidence that either of these two D.C. homeowners is anything other than perfectly satisfied with their ESAs. Thus, the fact that Plaintiff purports to step into their shoes and purports to represent their "interests" to invalidate ESAs that these D.C. homeowners voluntarily signed and have already benefitted from—likely without their knowledge or consent—not only upends the FAA's policy favoring voluntary arbitration, but also leaves no question that this Complaint, through the extraordinary relief sought, is "intertwined" with the contractual benefits offered to D.C. homeowners by these ESAs.

Against all this, Plaintiff will likely seek to sidestep mandatory arbitration by invoking *National Association of Consumer Advocates, Inc. v. Gemini Trust Co. LLC*, No. 2024-CAB-003999 (D.C. Super. Ct. Aug. 7, 2025) (Order Denying Defendant's Motion to Compel Arbitration). In *Gemini*, the court denied a motion to compel arbitration that, among other arguments, raised an equitable estoppel theory. *Id.* For several reasons, *Gemini* is inapposite here.

For starters, "Superior Court holdings are never binding authority in other cases, even in the Superior Court itself." *Lewis v. Hotel & Rest. Emps. Union, Loc. 25, AFL-CIO*, 727 A.2d 297, 302 (D.C. 1999). In addition, *Gemini* is currently on appeal and thus carries even less persuasive weight—since the D.C. Court of Appeals may (and likely will) reach a contrary conclusion, especially given *Gemini*'s departure from the FAA and settled law.

In any event, even if *Gemini* were entitled to any weight (which it is not), it was wrongly decided and should not be followed. *Gemini* is irreconcilable with the plain text of D.C. Code § 28-3905(k)(1)(D)(i), which conditions Plaintiff's right to bring its CPPA claim on whether "the consumer or class could bring an action" in their own right. *Gemini* is contrary to the cardinal rule that every provision of a statute must be given effect. *See Grayson v. AT&T Corp.*, 15 A.3d 219, 238 (D.C. 2011). To make matters worse, the court in *Gemini* issued no reasoned analysis on estoppel. Instead, the court simply focused on whether NACA was a party to, or otherwise bound as a mere representative or assignee of signatories to, the defendant's contract. Order, *Gemini Trust Co.*, No. 2024-CAB-003999, at 7-14. The court then separately analyzed whether the CPPA's provision governing standing for public interest organizations conflicts with the FAA.[4] *Id.* at 14-19. At no point did the court in *Gemini* expressly analyze or provide any reasoning on the equitable estoppel principles raised in this Motion. *See In re L.C.*, 348 A.3d 37, 50 (D.C. 2025) (stating that only "[l]egal principles adopted by [a] court after explicit analysis and then relied upon as the basis of a decision constitute binding authority" (cleaned up)).

---

[4] To the extent Plaintiff argues that the CPPA's public interest organization standing provision categorically exempts it from arbitration as a matter of D.C. law, that argument is preempted by the FAA. The FAA displaces any state or local rule that "stand[s] as an obstacle to the accomplishment" of the FAA's policy of enforcing arbitration agreements, including rules that single out arbitration agreements for disfavored treatment—whether facially or as applied. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-43 (2011) (citation omitted); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018).

Moreover, in *Gemini*, NACA also did not seek relief that conflicted with the expressed interests of the consumers. NACA sought only to enjoin allegedly illegal, narrow provisions of the defendant's User Agreement—a remedy that (potentially) aligned with, rather than contradicted, the interests of the individual consumers who had suffered actual injury from unauthorized transactions. Complaint ¶ 70, *NACA v. Gemini Trust Co.*, No. No. 2024-CAB-003999 (D.C. Super. Ct. June 26, 2024). Here, by contrast, Plaintiff seeks to void all ESAs in their entirety, which consumers voluntarily entered into and authorized, received substantial upfront cash payments from, and have not challenged themselves. Compl. ¶ 198. The *Gemini* court's reasoning—that NACA sues "on behalf of consumer interests generally," Order, *Gemini Trust Co.*, No. 2024-CAB-003999, at 13, and is not subject to the control or consent of individual consumers in its prosecution of the suit—has no application where, as here, Plaintiff seeks to unilaterally and non-consensually nullify ESAs that the D.C. homeowners bargained for, benefitted from, and have not repudiated. *Gemini* had no occasion to consider whether a third-party like NACA may use the CPPA to void the bargained-for contractual rights of consumers who have not expressly consented to that relief.

In sum, Plaintiff's CPPA claim is plainly intertwined with the ESAs and with the D.C. homeowners who entered into them. Because there "would be no claim" against Unison "but for the contract, applying the doctrine of estoppel is appropriate." *Sakyi*, 308 F. Supp. 3d at 385.

**B. *Plaintiff's CPPA claim and any questions about arbitrability plainly fall within the scope of the Arbitration Agreement.***

The Arbitration Agreement contained in the ESAs covers "any past, present, or future claim, dispute, or controversy . . . whether in contract, tort (intentional or otherwise), constitution, statute, common law, principles of equity, or otherwise . . . which arises out of or relates to the Unison HomeOwner Agreement." Haugen Decl. ¶ 6, Ex. 1 at § 20.1. Plaintiff's sole CPPA claim—which challenges the terms, structure, disclosures, function, and alleged deceptiveness of

the ESAs—necessarily "arises out of or relates to" those very ESAs. If that were not enough, D.C. courts resolve "any doubts" about "whether a matter is within the scope of an arbitrator's authority" "in favor of arbitration," *Hercules*, 613 A.2d at 922—leaving no question that Plaintiff's CPPA claim is subject to arbitration. *See* Haugen Decl. ¶ 6, Ex. 1 at § 20.3. ("The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.").

Given this, to the extent Plaintiff intends to argue that these Arbitration Agreements are invalid or otherwise cannot be enforced ***for any reason***, Plaintiff's assertion of invalidity must also be referred to the arbitrator for an initial decision, as specified in the Arbitration Agreement. When an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—one that delegates threshold issues of arbitrability to the arbitrator and not courts—the FAA requires courts to "compel[] arbitration" to address those issues as well. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-70, 69 n.1 (2010) (citation omitted). Threshold issues of arbitrability that must be sent to arbitration include Plaintiff's likely (but meritless) argument that the Arbitration Agreement cannot be enforced due to the Truth in Lending Act ("TILA"). The reason for this is simple: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

Here, the two D.C. homeowners that Plaintiff purports to represent expressly agreed that "[t]he interpretation and scope of th[e] Arbitration Provision, and the arbitrability of any Claim shall be resolved by neutral, binding arbitration and not by a court action." Haugen Decl. ¶ 6, Ex. 1 at § 20.3. Accordingly, D.C. law is clear that this Court must "leave [any] challenge to the validity of the agreement as a whole to the arbitrator." *Bank of Am., N.A. v. District of Columbia*, 80 A.3d 650, 665 (D.C. 2013); *see also Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 864-65

(D.C. 2005) ("[O]nce [the] basic question has been resolved in favor arbitration . . . it is for the arbitrator to resolve other 'gateway' matters[,]" including "procedural questions which grow out of the dispute and bear on its final disposition . . . and allegations of waiver, delay, or a like defense to arbitrability." (cleaned up)). Given this clear edict from the D.C. Court of Appeals, it would be unnecessary and inappropriate for this Court to decide in the first instance whether TILA precludes enforcement of the Arbitration Agreements.

But if the Court were inclined to ignore the FAA and decide the issue in the first instance, it should find that TILA does not apply as a matter of law and that the Arbitration Agreement is enforceable. TILA provides that "[n]o residential mortgage loan . . . may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). TILA defines a "residential mortgage loan[]" as a "***consumer credit transaction*** that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling . . . ." 15 U.S.C. § 1602(dd)(5) (emphasis added). TILA's implementing regulation, Regulation Z, likewise provides that "[a] contract or other agreement for a ***consumer credit transaction*** secured by a dwelling . . . may not include terms that require arbitration . . . ." 12 C.F.R. § 1026.36(h)(1) (emphasis added); *see* 15 U.S.C. § 1602(f) ("The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.").

But the ESAs at issue in this case are not a "residential mortgage loan" precluded from arbitration by TILA or Regulation Z because they do not qualify as "a consumer credit transaction" as a matter of law. The ESAs clearly explain that they are options contracts—not a credit transaction—and they operate as such. Haugen Decl. ¶ 7, Ex. 2 at § 3, 3.1.1-3.1.2; *id.* § 12.1. Under

the ESAs, Unison provides an upfront infusion of capital to the D.C. homeowner for the homeowner to spend however they wish. *Id.* § 2.1. In return, the D.C. homeowner gives Unison the option (but not the obligation) to pay the homeowner even more to purchase a share of their property at a future date and share in any appreciation or depreciation of the property. *Id.* § 3, 3.1.1-3.1.2. The D.C. homeowner has no obligation to repay any sum certain, as credit and debt transactions require. *Id.* § 12.1. Payment, if any, under the ESA is contingent on sale, refinancing, conclusion of the term, or other termination events generally within the homeowner's control. And Unison has no obligation to purchase a share of the property; it simply has the option to do so.

This distinction is dispositive. The Official Commentary to Regulation Z expressly clarifies that "[t]he following situations are ***not considered credit*** for purposes of the regulation: . . . The execution of option contracts[.]" 12 C.F.R. Pt. 1026, Supp. I, Part 1, cmt. 2(a)(14)(1)(vii) (emphasis added). Regulation Z includes an exception to that rule only "if there is an agreement at that time [when the option is exercised] to defer payment of a debt," *id.*, which does not apply here, since the hypothetical exercise of Unison's option confers a partial equity share of the property and does not confer a debt obligation on the D.C. homeowner.

Consequently, because ESAs are options contracts that do not extend "credit" and do not qualify as credit transactions, the law is clear that ESAs do not qualify as a "residential mortgage loan" barred from arbitration.[5] In any event, this Court need not reach this complex issue in the

---

[5] To the degree Plaintiffs argue that TILA displaces the FAA, this argument is also inapplicable because TILA only prohibits mandatory arbitration clauses involving residential mortgages, and Unison's ESAs do not operate as mortgages. As such, TILA does not displace the FAA with regard to arbitrability of Unison's ESAs. *See Lewis*, 584 U.S. at 510 ("When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." (cleaned up)).

first place because the two D.C. homeowners at issue expressly agreed to delegate all issues of arbitrability—including the validity of their ESAs under TILA—for the arbitrator to decide.

## II. This Action Must Be Stayed Pending this Court's Ruling on this Motion.

D.C. Code, § 16-4407(e) provides: "If a party makes a motion to the court to order arbitration, the court, on just terms, shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section." Unison's Motion alleges that the entirety of Plaintiff's CPPA claim is subject to arbitration. Therefore, upon filing this Motion, D.C. law requires that the entirety of this action be stayed pending resolution of this Motion. If the Court grants the Motion, then D.C. Code, § 16-4407(f) mandatorily extends the stay on this action pending the resolution of arbitration proceedings.

In addition to being mandatory under D.C. law, there is also good cause for a stay. If this Court grants this Motion, there would be no reason for the parties to expend significant time and resources drafting and filing a motion to dismiss, opposition, and reply, or for the parties and this Court to expend significant time and resources on a hearing to address the parties' arguments. Only if this Motion is denied would there be any need for Defendants to respond to the Complaint.

Accordingly, Defendants respectfully request that this action, including Defendants' current May 11, 2026, deadline to file a motion to dismiss, be promptly stayed as required by D.C. Code, § 16-4407(e) pending the Court's ruling on this Motion. If the Court grants the Motion, then Defendants request that the mandatory stay be extended pursuant to D.C. Code, § 16-4407(f).[6] If

[6] Defendants have separately moved to stay a related action, *Evans v. Unison Agreement Corp.*, No. 1:26-cv-00999-RC (D.D.C.), pending resolution of this action. *See* Defs.' Mot. to Stay, *Evans*, Dkt. No. 12 (Apr. 1, 2026). If this Court grants this Motion, Defendants may consider consenting to lift any stay imposed in *Evans*.

the Motion is denied, then Defendants request that Defendants' deadline to respond to Plaintiff's Complaint be set for twenty-one (21) days after the ruling on this Motion.

## CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to submit its claim to arbitration and stay this action pending the outcome of those proceedings. In the meantime, this action should be stayed pursuant to the mandatory stay provisions in D.C. Code, § 16-4407(e).

Dated: May 6, 2026

Respectfully submitted,

*/s/ Raymond P. Tolentino*

Michelle L. Rogers (D.C. Bar #498625)
Raymond P. Tolentino (D.C. Bar #1028781)
Matt K. Nguyen (D.C. Bar #1736777)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Phone: 202-842-7800
Fax: 202-842-7899
Email: mrogers@cooley.com
Email: rtolentino@cooley.com
Email: mnguyen@cooley.com

*Counsel for Defendants Unison Agreement Corp., Unison Investment Management, LLC, and Real Estate Equity Exchange, Inc.*