**BEFORE THE UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: Unison "HomeOwner Agreement" Equity Option Contract, Marketing, and Sales Practices Litigation | MDL No. 3201 |

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER TO THE EASTERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

ARGUMENT .......... 4

I. PLAINTIFFS' ARGUMENTS AGAINST CONSOLIDATION FAIL .......... 4

A. Plaintiffs Do Not Meaningfully Dispute That The Related Actions Involve Common Questions Of Fact .......... 4

B. Plaintiffs' Judicial Efficiency Arguments Are Not Persuasive .......... 9

i. Coordinated discovery among some Plaintiffs' counsel does not provide the efficiency benefits of formal consolidation. .......... 9

ii. The risk of inconsistent decisions on arbitration and class certification is real. .......... 12

iii. The local action doctrine does not bear on transfer. .......... 14

C. Plaintiffs Do Not Meaningfully Address The Remaining Arguments In Favor Of Consolidation. .......... 17

II. THE EASTERN DISTRICT OF NEW YORK IS A MORE APPROPRIATE FORUM THAN THE NORTHERN DISTRICT OF CALIFORNIA. .......... 18

CONCLUSION .......... 20

## INTRODUCTION

Plaintiffs have no serious argument that "every statutory factor" of the MDL consolidation standard is met: (1) the Related Actions present common issues of fact, (2) transfer would be just and efficient, and (3) it would serve the convenience of the parties and witnesses. *See* Joint Opp. at 11, Evans Opp. at 4.[1]

On the first prong, Plaintiffs argue that there are not enough common issues of fact, but at the same time concede in sworn attorney declarations that the "operative facts are similar across the related actions," *e.g.*, Terrell Declaration, ECF No. 8-1, at ¶ 14. Not surprisingly, Plaintiffs fail to identify any materially different or *un*common facts among the Related Actions. *See* § I.A, *infra*.

On the second prong, Plaintiffs concede that discovery will be substantially the same. *See* Joint Opp. at § I.A. But their assurance that they plan to voluntarily coordinate is not a substitute for formal consolidation, particularly where Unison *already* is dealing with fractures in the purported coordination efforts of Plaintiffs' counsel, and it does not address the new cases that have been (or will be) filed. *See* § I.B.i, *infra*. The Motion identified two examples where proceeding independently risked inconsistent decisions—on arbitration and class certification. Plaintiffs do not meaningfully respond to Unison's arbitration arguments, other than to say that there are no common fact questions about arbitration because not all Plaintiffs have arbitration agreements. *See* Joint Opp. at § II.A. Even if certain named plaintiffs do not have arbitration agreements, Plaintiffs do not dispute that many class members do (in fact, all class members with contracts entered into since late 2019 do). And Plaintiffs have no response to the merits of Unison's

[1] Plaintiffs' Joint Opposition, ECF No. 19, is referred to as the "Joint Opposition" or "Joint Opp.," and Plaintiff Lilly V. Evans's Opposition, ECF No. 20, is referred to as the "Evans Opposition" or "Evans Opp." Defined terms have the same meaning as in Unison's Brief in Support of Defendants' Motion for Transfer, ECF No. 1-1, which is referred to as the "Motion" or "Mot." Page references are to ECF page numbers.

argument that proceeding separately risks inconsistent decisions on the same arbitration questions. *See* § I.B.ii, *infra*. On class certification, Plaintiffs say that their claims involve different state laws and their classes do not overlap. *See* Joint Opp. at § I.C. As Unison explained in the Motion, this is no impediment, the Panel routinely consolidates cases involving claims brought under the laws of several states. *See* § I.B.ii, *infra*.

Plaintiffs' main argument against consolidation is the purported inefficiency under the local action rule. *See* Joint Opp. at § I.B. For many reasons, and as explained further below, the local action doctrine is irrelevant here and this argument has no bearing on the Motion at all. But, even if this is raised before the transferee court such that the court *might* need to address the argument (and reject it as plainly wrong), that does not overcome the fact that the many efficiencies of consolidation are overwhelming here. This is particularly true regarding the critical need for the arbitration issue to be resolved once, by a single court, rather than at least five times by five different courts. Five constituent cases involve either a named plaintiff with an arbitration agreement, a proposed class that contains numerous putative class members with arbitration agreements, or both. This means the arbitration issue will eventually have to be decided in at least five different cases, with rulings then potentially subject to appeals or attempts at appeals in five different circuits (the 1st, 2d, 3d, 8th, and 10th circuits). Allowing that to happen is an invitation for potential judicial chaos and a one-way ticket to guaranteed inefficiency. Consolidation is the obvious needed outcome here. *See* § I.B.iii, *infra*.

On the third prong, Plaintiffs allege only that delay associated with consolidation may prejudice their ability to obtain "expeditious interim relief." Joint Opp. at 17; *see also* Evans Opp. at 9-10. This contention is speculative, if not misleading, because no plaintiff has sought such relief

or even suggested they plan to. And Plaintiffs do not dispute that coordinated proceedings will be more convenient for the witnesses, Unison, and counsel. *See* § I.C, *infra*.

Finally, Plaintiffs' preferred alternative forum makes no sense. *See* Joint Opp. at § III. No Related Action is pending in the Northern District of California, and whatever form this case takes, it will *not* involve California consumers or properties located in California. There is already a class action pending in California state court that seeks to represent all California homeowners and none of the constituent actions seek to do so. The nexus of the MDL lies on the East Coast where Related Actions are pending (and Plaintiffs reside) in New York, New Jersey, Massachusetts, the District of Columbia, and Maryland. Nor do Plaintiffs dispute either the convenience of the Eastern District of New York, or Judge Vitaliano's capability to handle the MDL. *See* § II, *infra.* That is where a consolidated case should proceed.

## ADDITIONAL RELEVANT BACKGROUND

Since Unison filed the Motion four weeks ago, the number of Related Actions has grown from five to seven. In the NY and CO Actions, the respective courts each granted Unison's unopposed request to stay proceedings on August 20, 2026. NY Action, Aug. 20, 2026 Minute Order; CO ECF No. 30. In the MA Action, the parties stipulated that Unison's deadline to respond to the complaint would be deferred pending resolution of the Motion, and the court so-ordered the stipulation on August 27, 2026. MA ECF Nos. 14, 15.

In the DC Action, Unison filed a motion to stay proceedings pending the outcome of this Motion on August 21, 2026, which Plaintiff opposed. DC ECF Nos. 25, 26. Because Unison's stay motion was undecided as of the deadline for it to respond to the complaint, Unison also filed a motion to dismiss the DC Action on September 4, 2026 arguing, among other things, that Plaintiff's claims are time barred. DC ECF No. 33. Plaintiff's response is due on September 18, 2026.

As previewed in the Motion (at 10, n. 9), Unison removed the MD Action, *Franciscchetti v. Unison Agreement Corp.*, 1:26-cv-03341-JRR, to the U.S. District Court for the District of Maryland and tagged it in this proceeding on August 26, 2026. MD ECF No. 1; MDL ECF No. 7. Unison filed a motion to stay proceedings in the MD Action pending the outcome of this Motion on September 11, 2026. MD ECF No. 12. Plaintiffs indicated their intent to oppose; their response is due on September 25, 2026.

The MO Action, *Greathouse v. Unison Agreement Corp.*, 4:26-cv-00771-RK, was filed on September 4, 2026, in the U.S. District Court for the Western District of Missouri, asserting violations of Missouri's consumer protection and mortgage lending laws on behalf of a putative class of Missouri consumers. MO ECF No. 1 ("MO Compl."). Unison tagged the MO Action in this proceeding on September 9, 2026. MDL ECF No. 17. The MO Action further confirms the pace of class action filings detailed in the Motion (at 7): a new putative class action has been filed against Unison approximately every six weeks for the past year.

## ARGUMENT

### I. PLAINTIFFS' ARGUMENTS AGAINST CONSOLIDATION FAIL.

#### A. Plaintiffs Do Not Meaningfully Dispute That The Related Actions Involve Common Questions Of Fact.

Unison's Motion demonstrated that the Related Actions present common questions of fact (*see* Mot. § I.A.), which Plaintiffs do not meaningfully dispute. They argue that Unison has not identified *enough* common fact questions, but even that is flatly contradicted by their own sworn attorney declarations and by the substance of their briefing. *See* Joint Opp. at § II. Each attorney declaration states that "the operative facts are similar across the related actions." *See* Terrell Decl., ECF 8-1 ¶ 14, Aniskevich Decl., ECF 8-2 at ¶ 12; Nagdeman Decl., ECF 8-3 at ¶ 7; Kavanagh Decl., ECF 8-4 at ¶ 11; Yellin Decl., ECF 8-5 at ¶ 8. And Plaintiffs' briefs identify only a single

fact that supposedly differs among the Related Actions: the number of homeowners in each state who may be covered by each action's putative class. *See* Joint Opp. at 18. This is not meaningful to the consolidation question, since Plaintiffs concede that they will all seek this information. Regardless, Section 1407 does not require a complete identity—or even a predominance—of common factual issues as a prerequisite to centralization. *See In re AT&T Inc. Customer Data Sec. Breach Litig.*, No. MDL 3114, 2026 WL 2445868, at *2 (J.P.M.L. Aug. 17, 2026) ("Section 1407 does not require a complete identity of common factual issues or parties when the actions arise from a common factual core."); *In re Costar Grp., Inc., Antitrust Litig.*, No. MDL 3192, 2026 WL 2409364, at *1 (J.P.M.L. Aug. 11, 2026) (same); *In re Air Crash over the S. Indian Ocean, on Mar. 8, 2014*, 190 F. Supp. 3d 1358, 1359 (J.P.M.L. 2016) (same). Plaintiffs' concession that the Related Actions involve "operative facts" that are "similar" is enough, especially since nothing in their briefs shows otherwise.

The DC Action Plaintiff argues that her case is "factually distinct" from the putative class actions because she will not have to litigate arbitration or class certification. Evans Opp. at 6. But arbitration and class certification are not the only common questions posed by the Related Actions. The DC Action has the same "common factual core" as the others—centering on whether Plaintiff's Unison HomeOwner Agreement is an unconscionable mortgage loan. *See* DC Compl. ¶ 29. In addition, the DC Plaintiff's claims—like the claims of other plaintiffs who entered into their HomeOwner Agreements before November 2019—are time barred. *See generally* DC ECF No. 33. Whether the applicable statutes of limitations dispose of these claims, or whether Plaintiffs have pleaded the facts necessary to save their late claims are also common questions to all Related Actions. Without centralization, Unison will need to file seven nearly identical motions to dismiss on statutes of limitations grounds in seven different courts and potentially receive seven different

results on the same equitable issues.[2] If the cases are consolidated, this issue could be resolved once, promoting precisely the efficiency that Section 1407 is designed to achieve. Further, this panel could always choose to consolidate only the class actions and any individual actions with arbitration agreements, which would moot all of the issues raised by the DC Plaintiff.

Plaintiffs' remaining arguments about the purported insufficiency of the common fact issues identified by Unison fare no better. Plaintiffs attempt to recharacterize the common fact questions as legal ones (*id.* at 19-22), argue that the arbitration question can be decided without discovery (*id.* at 21-22), and assert that the number of Related Actions is too low and the common facts are undisputed which together impose a "heightened burden" that Unison has failed to meet (*id.* at 22-24). None of these arguments negates that the Related Actions share a common factual core that weighs in favor of consolidation.

Plaintiffs' attempt to recharacterize common factual questions as legal ones does not help them. *See* Joint Opp. at 19-22. First, "centralization may be warranted even where common questions of law are prominent, as long as common factual issues are also present." *In re Generali Covid-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020). Second, the nature and terms of Unison's HomeOwner Agreement are plainly fact questions, as are the details of the disclosures that Plaintiffs uniformly challenge and the economics of the transactions that Plaintiffs all argue are unconscionable, among other common facts, none of which Plaintiffs suggest differ from case to case. Indeed, their concession that "the operative facts are similar across the related actions" (*supra* at I.A.) applies with full force here. Third, the cases they cite are all distinguishable. The Panel found that the dispute in *In re FCA US LLC "Letter 311" Lab. Cont.*

---

[2] That the DC Plaintiff brings common law fraud claims is irrelevant. *See* Evans Opp. at 7. As explained, Section 1407 requires only that the actions "involv[e] one or more common questions of fact." 28 U.S.C. § 1407(a). That standard is satisfied.

*Litig*. could be resolved with "little, if any, discovery," and also noted that both sides were "represented by [the same] national counsel in all actions" who could easily coordinate what minimal discovery was required. 778 F. Supp. 3d 1380, 1381-82 (J.P.M.L. 2025). No Plaintiff suggests foregoing discovery here. The dispute in *In re Enhanced Recovery Co. LLC, Fair Debt Collection Pracs. Act (FDCPA) Litig.* was both precise *and* purely legal. 363 F. Supp. 3d 1375, 1377 (J.P.M.L. 2019) (the "only" dispute was "whether [the defendant] is liable under the FDCPA for" the contents of debt collection letters that purportedly identified the same wrong creditor). Plaintiffs' complaints about their Unison HomeOwner Agreements are wide-ranging. And the *In re Healthextras Ins. Mktg. & Sales Pracs. Litig.* Panel found that there *were* common fact issues "regarding the [defendants'] sales and marketing of disability insurance policies" in that case. 24 F. Supp. 3d 1376, 1376 (J.P.M.L. 2014). The Panel's decision that centralization was not necessary on convenience and efficiency grounds relied in part on the fact that "informal coordination appears practicable" to manage overlapping discovery "especially given that all plaintiffs are represented by the same two law firms." *Id.* at 1376-77. Here, Plaintiffs in the Related Actions are represented by at least *ten* law firms and public interest agencies, and their purported efforts to coordinate are already fraying (*see infra* at § I.B.i.).

The same point disposes of Plaintiffs' arbitration argument. Plaintiffs say this, too, is a legal question and argue that Unison said arbitrability could be decided on the face of the agreement without discovery. *See* Joint Opp. at 20-21. The relevant facts underlying the arbitration dispute—the terms of the arbitration agreements, whether Plaintiffs' TILA defense applies, and delegation—are identical across every Related Action involving an arbitration clause, including those with putative class members with arbitration clauses. Plaintiffs make no argument to the contrary. Whether discovery is required to resolve these disputes is beside the point. For at least five courts

to be presented with the same dispute on an essentially identical record and potentially reach different conclusions is the prime example of why consolidation is needed. Plaintiffs point to *In re Real Estate Transfer Tax Litig.* to argue that avoiding differing results on the question of enforceability of a contract is not enough to justify centralization, but the constituent actions in that case had "varied procedural postures" resulting in "insufficient potential efficiencies to be obtained with regard to discovery" for "such disparate postures." 895 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012). No such problem exists here, where the Related Actions are all at near identical procedural stages and no meaningful discovery has commenced in any action, nor have any arbitration decisions issued. *See* Mot. at § I.B.3. Given the strong federal policy in favor of arbitration (*see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")), and Unison's automatic right to interlocutory appeal if a motion to compel arbitration is denied (*see* 9 U.S.C. § 16(a)(1)(B)), coordination of these motions is especially efficient. *See* Mot. at § I.B.2.a.

Next, Plaintiffs suggest that the number of Related Actions and that the common facts are supposedly undisputed imposes a "heightened burden" on Unison. *See* Joint Opp. at 22-24. This fails too. Plaintiffs' citations to *In re Pub. Recs. Collection Fair Credit Reporting Act Litig.*, 641 F. Supp. 2d 1382 (J.P.M.L. 2009), and *In re Enhanced Recovery Co., LLC, FDCPA Litig.*, 363 F. Supp. 3d 1375 (J.P.M.L. 2019), for the proposition that the common facts here are not sufficiently complex or in dispute to justify consolidation are unpersuasive because the Panel in those cases held that voluntary cooperation and coordination among the parties and courts were a feasible alternative to centralization. Those same alternatives would be a poor substitute here (*infra* at § I.B.). *In re Real Estate Transfer Tax Litig.*, does not help Plaintiffs because, again, that decision

turned on the "disparate postures" of the constituent cases. 895 F. Supp. 2d at 1351. In addition, the Panel has consistently rejected Plaintiffs' repeated complaints about the insufficient number of Related Actions (*e.g.*, Joint Opp. at 11, 23, 24), even as recently as last month. For example, the Panel granted centralization in *In re Costar Group, Inc. Antitrust Litig.*, where there were only three related actions pending in two districts, plus a related action filed in a third district after the motion was filed. MDL No. 3192, 2026 WL 2409364, at *1-*2. And in *In re Firefighter Turnout Gear Mktg., Sales Pracs. & Prods. Liab. Litig.*, the Panel expressly rejected the argument that centralization is premature because there are relatively few actions pending, finding that "informal coordination alone is not likely to yield the same efficiency and convenience benefits as centralization before a single judge who can coordinate pretrial proceedings in all the actions." MDL No. 3191, 2026 WL 2409388, at *2 (J.P.M.L. Aug. 18, 2026).

**B. Plaintiffs' Judicial Efficiency Arguments Are Not Persuasive.**

As directed by the Panel, Unison has considered whether informal coordination among counsel or voluntary transfer under 28 U.S.C. § 1404 could serve as adequate alternatives to consolidation under Section 1407. For the reasons set forth below, neither mechanism offers a practical or reliable substitute for formally consolidated proceedings.

***i. Coordinated discovery among some Plaintiffs' counsel does not provide the efficiency benefits of formal consolidation.***

Plaintiffs concede that discovery will be the same across all Related Actions and argue that they can voluntarily coordinate it. *See* Joint Opp. at § I.A. Plaintiffs' professed willingness to coordinate discovery is appreciated but insufficient for at least two independent reasons.

First, discovery is not the only litigation activity that would be inefficient to conduct piecemeal. Every dispute in this litigation—every pretrial motion, every discovery dispute, every scheduling question, and every threshold legal issue—can either be resolved once by a single

transferee court or resolved seven or more times by seven or more different transferor courts. Plaintiffs have already taken divergent positions on the preliminary question of whether the constituent cases should be stayed pending resolution of this Motion: Plaintiffs in the NY, CO, and NJ Actions agreed to a full stay pending the Panel's decision; MA Plaintiffs agreed to a deferred schedule for Unison's deadline to respond to the complaint triggered by the Panel's decision—not a stay; DC and MD Plaintiffs opposed a stay, requiring the parties and counsel to engage in disputed motion practice while this Motion is pending; and MO Plaintiffs' position is unknown as of this filing. This outcome is unsurprising because, among the Related Actions, Plaintiffs are represented by at least *ten* law firms and public interest organizations. *See* ECF 17. If the existing divergent positions are a preview, informal coordination will not hold on the more complex disputes ahead.[3] Further, even if the discovery sought was "coordinated" among the ten law firms representing Plaintiffs, any resulting discovery disputes would still be subject to potentially varying decisions by seven different federal courts, the outcomes of which could lead to very different discovery requirements (and further disputes) in any or all of the Related Actions.

Absent consolidation, Unison will have to answer seven nearly identical complaints; file at least five nearly identical motions to compel arbitration in actions where arbitration agreements are at issue; and file nearly identical motions to dismiss on statutes of limitations grounds where motions to compel arbitration are inapplicable or unsuccessful. And for any current or future class action where a named plaintiff does not have an arbitration agreement, the arbitration issue will still need to be considered by the court at the class certification stage (if the case survives to that

[3] The DC Plaintiff's position illustrates the point. Despite adopting the Joint Opposition's commitment to coordinated discovery, the DC Plaintiff simultaneously advocates in her individual brief for a bespoke discovery schedule unique to her action. *See generally* Evans Opp. Absent court-ordered coordination, every Plaintiff has an argument for why that case should go first or proceed differently, destroying the efficiencies that coordination is supposed to achieve.

point). Each motion will be fully briefed and argued in a different court, and each court may reach a different answer. Consolidation resolves all of these disputes once, for all Related Actions, at the same time. *See In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355 (J.P.M.L. 2025) ("Centralization will allow a single judge to coordinate discovery, streamline pretrial proceedings, and eliminate inconsistent rulings."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1354 (J.P.M.L. 2018) (finding that "the number of actions, districts, and involved counsel, and the complexity of the litigation, make effective coordination on an informal basis impracticable").

Second, the Plaintiffs' lawyers that signed the Joint Opposition do not speak for all existing Plaintiffs—let alone future ones. As of today's filing, the positions of Plaintiffs in the MD and MO Actions on voluntary coordination of discovery are unknown. *See In re PowerSchool Holdings, Inc., & PowerSchool Grp., LLC Customer Data Sec. Breach Litig.*, 780 F. Supp. 3d 1352, 1354 (J.P.M.L. 2025) (finding informal coordination was not the most efficient route to resolving the litigation where no parties moved under Section 1404 and there was no assurance coordination would be uncontested). Plaintiffs further offer no mechanism (because none exists) to bind plaintiffs' counsel in future-filed actions to any voluntary framework. *See In re FTX Cryptocurrency Exch. Collapse Litig.*, 677 F. Supp. 3d 1379, 1381 (J.P.M.L. 2023) (finding informal coordination inadequate where there were distinct groups of non-overlapping plaintiffs' counsel pursuing claims, including potential tag-along actions, on behalf of putative classes and there was a possibility of inconsistent rulings on *Daubert* and class certification).

Plaintiffs rely on four Panel decisions for the proposition that informal coordination is preferable (*see* Joint Opp. at 13-14), each of which is distinguishable. In *In re American Express Co. Anti-Steering Rules Antitrust Litig.*, informal coordination was already operational: the parties

had established a discovery protocol, sought a joint hearing with the involved judges, and the two judges in adjacent districts had already agreed to work together. 657 F. Supp. 2d 1365, 1366 (J.P.M.L. 2009). The Panel's confidence in informal coordination was grounded in a functioning framework, not a representation. *Id*. In *In re Harvest Entities Fair Labor Standards Act & Wage & Hour Litig.*, all plaintiffs shared the same lead counsel, defendants were represented by only three coordinating firms, and all counsel affirmed their willingness to cooperate. 584 F. Supp. 3d 1380, 1381 (J.P.M.L. 2022). In *In re Huel, Inc., Heavy Metal Prods. Liab. Litig.*, the defendant—the party most burdened by litigation in different districts—opposed centralization and affirmatively asserted that alternatives were superior. 829 F. Supp. 3d 1375, 1376 (J.P.M.L. 2026). Here, the situation is inverted: Unison seeks centralization because it faces the prospect of litigating the same questions in seven courts simultaneously. In *In re Uber Techs., Inc., Wage & Hour Emp. Pracs.*, plaintiffs in six of the seven actions were represented by the same counsel, making coordination among them straightforward. 158 F. Supp. 3d 1372, 1373 (J.P.M.L. 2016). The common thread in all four decisions is that informal coordination was either already operative, or the parties most burdened supported it. Neither condition is present here.

***ii. The risk of inconsistent decisions on arbitration and class certification is real.***

In the Motion, Unison identified at least two examples of issues that could result in inconsistent rulings if the cases are not consolidated: arbitration and class certification. *See* Mot. at § I.B.2. Plaintiffs do not dispute that the risk of inconsistent decisions is a factor that weighs in favor of consolidation; rather, they argue there is no such risk here. *See* Joint Opp. at § I.C.

Plaintiffs do not meaningfully respond to the arbitration argument. They just say, in a section of their brief purporting to address the lack of common fact questions, that not all plaintiffs have arbitration agreements, and that federal courts are already divided on TILA. *See id.* at 18, 21. Neither of these arguments is responsive to the point Unison actually made—that "proceeding

independently risks inconsistent answers to th[e] common federal question" of whether the Related Actions "belong in court" or in individual arbitration. Mot. at 15-16. If the mandatory arbitration agreements are enforceable, none of the constituent class actions can proceed, at least not as the putative classes are currently defined. Even if certain named plaintiffs do not have arbitration agreements, Plaintiffs concede that five of twelve proposed class representatives do,[4] and that many putative class members do as well. *See* Joint Opp. at 18.

Plaintiffs complain that delaying the non-arbitration plaintiffs' claims while the arbitration question is resolved will be inefficient and prejudicial. *See id.* at 19; *see also* Evans Opp. at 9-10. Plaintiffs will make this merits argument whether the cases are consolidated or not, so it has no bearing on this Motion. Plaintiffs' suggestion that the risk of inconsistent decisions on arbitration does not matter because "circuit splits under TILA are not without precedent" is unpersuasive. Joint Opp. at 21. The inconsistency here arises not from the fact that different district courts might think differently about a broad legal issue; rather, it arises from the possibility that different courts may interpret the *same* set of agreements in disparate ways, with no efficient means of addressing the divergence. That justifies consolidation. *In re Uber Techs.*, 304 F. Supp. 3d at 1354 ("Centralization will avoid inconsistent rulings on . . . common pretrial motions," including motions to compel arbitration); *In re PrimeVision Health, Inc. Cont. Litig.*, 206 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002) (consolidating four actions "relat[ing] to standardized agreements").

On class certification, Plaintiffs say that their claims involve different state laws and that the classes do not overlap. Joint Opp. at § I.C. But none of the cases on which Plaintiffs rely denied consolidation *solely* on the basis of non-overlapping classes. *See* Joint Opp. at 17-18. *In re*

---

[4] The proposed class representative in the MO Action alleges that she entered into her Unison HomeOwner Agreement in November 2021, and concedes that her Agreement contains an arbitration provision. *See* MO Compl. ¶¶ 9, 16.

*Samsung Plasma Television Prods. Liab. Litig.* involved "only three actions" in which "plaintiffs in all three are represented by the same counsel." 322 F. Supp. 3d 1380, 1381 (J.P.M.L. 2018). *In re Enhanced Recovery Co., LLC, FDCPA Litig.* also involved "common plaintiffs' counsel" and "no dispute regarding" the operative facts. 363 F. Supp. 3d 1375, 1377 (J.P.M.L. 2019). Finally, *In re Title Ins. RESPA & Antitrust Litig.* involved not only "different regulatory regimes" and "variances in insurance regulation and law in each state," but also different sets of defendants. 560 F. Supp. 2d 1374, 1375-77 (J.P.M.L. 2008). While overlapping classes would make the risk of inconsistent decisions on class certification *more* likely, that risk is nonetheless present because of the common facts and legal theories in the Related Actions. For example, in *In re Inclusive Access Course Materials Antitrust Litig.*, the Panel found that "the possibility of inconsistent rulings on class certification and other pretrial matters" weighed in favor of consolidation of non-overlapping class actions because "the Panel frequently centralizes litigations involving differently-situated plaintiffs and differently-defined putative classes, where, as here, all actions arise from a common factual core." MDL No. 2946, ECF No. 67 at 2 (J.P.M.L. 2020). *See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362-63 (J.P.M.L. 2014) (consolidating non-overlapping "direct purchaser class actions, indirect purchaser class actions, and individual actions brought by competitors" because "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to class certification and preliminary injunctive relief); and conserve the resources of the parties, their counsel and the judiciary"). *See also* Mot. at 13-14.

***iii. The local action doctrine does not bear on transfer.***

In a Hail Mary attempt that falls short, Plaintiffs contend that consolidation will introduce inefficiency via a jurisdictional question rooted in the local action doctrine. Joint Opp. at § I.B.

This argument fails to undermine the efficiencies of consolidation for four separate reasons, including because it is half-baked and plainly wrong.

First, even assuming transfer introduced a jurisdictional question, the marginal cost is far outweighed by the efficiencies of consolidation. At most, Plaintiffs identify one additional dispute that might require briefing before the transferee court. Absent consolidation, Defendants' motions to compel arbitration alone must be litigated no fewer than five times, in five courts, by five different judges, with the attendant risk of inconsistent outcomes. Motions to dismiss non-arbitration plaintiffs' time-barred claims would be filed on no less than seven different dockets. The arithmetic of Plaintiffs' efficiency argument runs against them.

Second, it is unclear whether the doctrine still exists, and in what form. Courts are "split over whether the [local action] rule affects venue or jurisdiction." *Rowe v. Aurora Com. Corp.*, 2014 WL 3810786, at *3 (S.D. W. Va. Aug. 1, 2014), *aff'd*, 599 F. App'x 95 (4th Cir. 2015); *see also Fisher v. Virginia Elec. & Power Co.*, 243 F. Supp. 2d 538, 541 (E.D. Va. 2003) (determining that local action doctrine affects only venue). To the extent the doctrine is a rule of venue, Congress abolished it in 2011. *Rowe*, 2014 WL 3810786, at *3. Plaintiffs cite only one post-2011 case—*Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943 (9th Cir. 2014)—for the proposition that the doctrine is jurisdictional, yet even the Ninth Circuit acknowledged that its conclusion "is not free from doubt." *Id*. at 948.[5]

Third, because the doctrine has been abolished as a rule of venue, it has no bearing on Section 1407's transfer inquiry, which is, in essence, about "a change of venue for pretrial

[5] Plaintiffs' professed concern about whether a transferee court would have subject matter jurisdiction is further undermined by their own alternative proposal to transfer the MDL to the Northern District of California. *See* Joint Opp. at § III. If the local action doctrine were truly a non-waivable jurisdictional bar, the Northern District of California would face the same problem as the Eastern District of New York.

purposes." *In re FMC Corp. Patent Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976). In any event, the Panel is "not encumbered by considerations of venue" when ordering consolidation. *In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354 (J.P.M.L. 2004). Likewise, "jurisdictional objections . . . generally do not present an impediment to transfer," because the transferee court can resolve them. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1377 (J.P.M.L. 2023); *see also* Joint Opp. at 17 (citing *in re Aqueous* and acknowledging that "the Panel does not have power to decide questions going to jurisdiction"). And consolidation is unlikely to pose a jurisdictional issue at all, given that Section 1407(a) requires cases to be remanded back to the transferor district for trial, *Lexecon Inc. v. Milberg*, 523 U.S. 26 (1998), meaning that a "local" court will issue final judgment.

Fourth, the local action doctrine is irrelevant because the Related Actions are transitory, not local. Contracts—including contracts respecting lands—are transitory in nature. *Livingston v. Jefferson*, 4 Hughes 606, 664 (Cir. Ct. D. Va. 1811) (Marshall, C.J.) ("[C]ontracts respecting lands form no exception."). An action is not "local" merely because it "touch[es] upon land." *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 450 (2d Cir. 2000). Moreover, "[a] court, acting pursuant to *in personam* jurisdiction of a transitory action can order a remedy that affects real property" because "equity acts *in personam*," not *in rem*. *Tap Rocks Res. LLC v. Marathon Oil Permian LLC*, 704 F. Supp. 3d 1194, 1202 (D.N.M. 2023). Plaintiffs themselves confirm that the Actions "challenge Defendants' conduct relating to its 'Unison HomeOwner Agreements,'" which are contracts. Joint Opp. at 7. The gravamen of the Related Actions is that Unison violated consumer protection statutes by mislabeling a financial product—not by physical intrusion upon or injury to real

property.[6] The Panel routinely consolidates cases involving real property in different states without the local action doctrine presenting any obstacle. *See, e.g.*, *In re Dividend Solar Fin., LLC, & Fifth Third Bank Sales & Lending Pracs. Litig.*, 753 F. Supp. 3d 1365, 1367 (J.P.M.L. 2024); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 988 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013); *In re Novastar Home Mortg. Inc. Mortg. Lending Pracs. Litig.*, 368 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005).

**C. Plaintiffs Do Not Meaningfully Address The Remaining Arguments In Favor Of Consolidation.**

Plaintiffs do not dispute that all Related Actions are at substantially the same early procedural stage, that consolidation will eliminate duplicative depositions and document productions, or that no plaintiff will be required to travel outside their home district to participate in coordinated pretrial proceedings. *See* Mot. §§ I.B.3, I.C.

Plaintiffs' sole convenience objection—that "many homeowners may need expeditious interim relief" and would have nowhere to turn pending resolution of a jurisdictional question, Joint Opp. at 16-17—is both speculative and legally insufficient.[7] Such speculation does not outweigh the concrete benefit to all parties and witnesses of proceeding before a single judge who will resolve common questions once. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig*., 24 F. Supp. 3d at 1363. The Panel "look[s] to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation." *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012). The Panel has rejected

[6] Although some Plaintiffs assert a quiet title claim, that claim is ancillary to the predominant statutory causes of action, and the doctrine is applied to the substance of the litigation as a whole, not to any individual count. *See Bigio*, 239 F.3d at 450.

[7] This claim is an extension of Plaintiffs' local action doctrine argument, not a freestanding convenience objection—and that argument fails on its own terms for the reasons set forth *supra* at § I.B.iii.

far more compelling delay arguments than this one. *See In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Liab. Litig.*, No. MDL 3014, 2026 WL 926016, at *1 (J.P.M.L. Apr. 6, 2026) (rejecting plaintiff's argument that transfer would delay resolution of her claims where plaintiff had Stage IV lung cancer).

Plaintiffs' delay argument is undermined by their own actions: no plaintiff in any of the Related Actions has sought a preliminary injunction, a temporary restraining order, or any other expedited relief in any transferor court, nor have any of the Plaintiffs with arbitration agreements exercised their contractual right to arbitrate their disputes. The Eastern District of New York possesses the same authority to grant preliminary relief as any transferor court and is fully capable of setting an expedited schedule for any plaintiff with individualized urgent needs. Where cases "may involve case-specific or time-sensitive motions," the transferee court may "establish a separate track of proceedings if those actions, as certain plaintiffs contend, require expedited discovery or motions to protect the parties' rights, but the degree of consolidation or coordination is a matter soundly dedicated to the discretion of the transferee judge." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d at 1363.

## II. THE EASTERN DISTRICT OF NEW YORK IS A MORE APPROPRIATE FORUM THAN THE NORTHERN DISTRICT OF CALIFORNIA.

Plaintiffs' alternative request for transfer to the Northern District of California lacks support. *See* Joint Opp. at § III. None of the Related Actions are pending in California, and whatever form this litigation takes, it *cannot* include any California plaintiffs who entered into a HomeOwner Agreement in connection with a property located in California. The statewide consolidated putative class action pending against Unison in California Superior Court asserts a class definition that includes "[a]ll California persons (including family trusts) who own a property located in California that is or has been subject to a Unison HomeOwner Agreement or similar

product." *See In re Unison Contract Cases*, No. 5432 (Cal. Super. Ct.), First Am. Class Action Compl. ¶ 217. Thus, any California resident who owns a property in California subject to a Unison HomeOwner Agreement is already part of that putative class. A transfer of the Related Actions to the Northern District of California, as Plaintiffs request, would mean that the MDL would proceed in the one state whose consumers cannot be part of the consolidated action.[8]

Plaintiffs argue that the Northern District of California is Unison's home district, and that publicly available data suggests California is Unison's largest market. *See* Joint Opp. at 24. Neither of these facts support transfer there. In the modern era of electronic discovery, the physical location of a defendant's principal place of business carries almost no weight because document production is now conducted virtually as a matter of course. *See Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1283 (N.D. Ga. 2015) (finding that the physical location of documents was "neutral" and recognizing that "[s]ince the predominance of electronic discovery in the modern era, most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry"); *see also Amberslie v. Prisoner Transport Serv. of Am., LLC*, 2019 WL 1024183, at *8 (N.D.N.Y. Mar. 4, 2019) ("Although the documents are physically located in Tennessee and this factor would weigh in favor of transfer, the court does not view it as particularly significant given that we live in a technological age, where electronic production has become the norm in litigation."). The same is true with respect to Unison's employees because Unison will make them available for deposition in either New York or California, at Plaintiffs' counsel's preference (not to mention the wide spread prevalence and

[8] Because Unison is headquartered in California, any litigation filed in California against Unison by a California resident asserting California state law claims cannot be removed to federal court on the basis of diversity jurisdiction or pursuant to the Class Action Fairness Act.

convenience of remote depositions). And Unison's market share in California is irrelevant because, as explained, none of those consumers or contracts would be part of the MDL.

As Plaintiffs acknowledge in their attempt to manufacture a jurisdictional hurdle to consolidation, the nexus of the relevant facts lies on the East Coast, where the vast majority of the at-issue properties are clustered in New York, New Jersey, Massachusetts, the District of Columbia, and Maryland. *See* Joint Opp. at 14-16. The other relevant states—Colorado and Missouri—are not materially closer to California than they are to New York, making New York the more appropriate forum. *See* Mot. at 21 (citing *In re Pacquaio-Mayweather Boxing Match Pay-Per-View Litig.*, 122 F. Supp. 3d 1372, 1374 (J.P.M.L. 2015), for proposition that a district has a "significant nexus to th[e] litigation" where events related to claims in the litigation occurred there).

Plaintiffs note that the Northern District of California is easily accessible (Joint Opp. at 25)—but do not dispute the geographic accessibility of the Eastern District of New York. They also note the thirteen pending MDLs in the Northern District of California (Joint Opp. at 24)—but similarly do not dispute the qualifications and experience of Judge Vitaliano and the bench of judges in the Eastern District of New York. *See* Mot. at 21. Even if geographic accessibility and judicial qualifications are the same for both districts, where every other relevant factor supports the Eastern District of New York, it remains the most appropriate forum.

## CONCLUSION

For the foregoing reasons, Unison respectfully requests that the Panel transfer and consolidate the Related Actions, as well as any tag-along actions subsequently filed, to Judge Eric N. Vitaliano in the Eastern District of New York for coordinated pretrial proceedings.

Dated: September 15, 2026

Respectfully submitted,

GOODWIN PROCTER LLP

/s/ *Matthew S. Sheldon*
Matthew S. Sheldon
1900 N Street, N.W.
Washington, D.C. 20036
Tel.: (202) 346-4027
Fax: (202) 204-7302
MSheldon@goodwinlaw.com

Valerie A. Haggans
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
VHaggans@goodwinlaw.com

*Attorneys for Defendants Real Estate Equity Exchange, Inc., Unison Agreement Corp., Unison Investment Management, LLC, Odin New Horizon General Partner LLC, Odin New Horizon Real Estate Fund LP, and Unison Midgard Holdings LLC*